**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ASI, INC.,                                             Civil No. 19-763 (JRT/HB)

                              Plaintiff,

v.                                      **MEMORANDUM OPINION AND ORDER**
                                        **ON DEFENDANTS' MOTIONS TO DISMISS**

AQUAWOOD, LLC, *et al.*,

                              Defendants.

---

Derek Y. Sugimura, Keith M. Sorge, Shelli L. Calland & Stephen A. Weisbrod,
**WEISBROD MATTEIS & COPLEY PLLC**, 1200 New Hampshire Avenue, NW,
Suite 600, Washington, DC 20036, for plaintiff;

Stephen H. Locher & Matthew D. Callanan, **BELIN MCCORMICK, PC**, 666
Walnut Street, Suite 2000, Des Moines, IA 50309; John E. Floyd, Kamal Ghali
& Solesse L. Altman, **BONDURANT, MIXSON & ELMORE**, 1201 West
Peachtree Street, NW, Suite 3900, Atlanta, GA 30309; Emily Asp, James
Schoeberl & Stephen E. Schemenauer, **STINSON LLP**, 50 South Sixth Street,
Suite 2600, Minneapolis, MN 55402; David W. Asp & Kate M. Baxter-Kauf,
**LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite
2200, Minneapolis, MN 55401; Dennis B. Johnson, **CHESTNUT CAMBRONNE
PA**, 100 Washington Avenue South, Suite 1700, Minneapolis, MN 55401;
and Elisabeth A. Archer & Mark E. Weinhardt, **WEINHARDT LAW FIRM**, 2600
Grand Avenue, Suite 450, Des Moines, IA 50312**,** for defendants.

ASI, Inc., formally known as Aviva Sports, Inc., ("Aviva") brings this action seeking

to collect on an $8.5 million underlying judgment against Manley Toys, Ltd. Aviva alleges

that the Defendants—of which Manley Toys, Ltd. is not—are operating a RICO enterprise

and have committed other torts to prevent Aviva from collecting on that judgment. Three

separate groups of Defendants filed three separate Motions to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6). The Court will deny Defendants' Rule 12(b)(2) motions because it has personal jurisdiction over defendants. The Court will also deny Defendants' Motions pursuant to Rule 12(b)(6) because Plaintiff's claims satisfy Rules 8 and 9(b), are not time-barred, and otherwise allege sufficient facts to state a plausible claim on which relief can be granted.

**BACKGROUND**

**I.   THE PARTIES**

Plaintiff Aviva is a Minnesota corporation with its principal place of business in Minnesota. (Compl. ¶ 21, Mar. 19, 2019, Docket No. 1.)

The defendants referred to as the "Principals" consist of four natural persons: Chan Ming Yiu, also known as Samson Chan ("Samson Chan"), Liu Yi Man, also known as Lisa Liu ("Liu"), Brian Dubinsky ("Dubinsky"), and Chan Siu Lun, also known as Alan Chan ("Alan Chan"). (*Id.* ¶¶ 22-26.) The Chans and Liu are residents of Hong Kong and Dubinsky is a resident of California. (*Id.*)

The defendants referred to as the "Executives" consist of two natural persons: Richard Toth ("Toth") and Michael Wu ("Wu"). (*Id.* ¶¶ 27-29.) Toth is a resident of Iowa and Wu is a resident of California. (*Id.*)

The final natural person named as a defendant is Peter Magalhaes ("Magalhaes"), who is a resident of California, and is not referred to as an Executive or Principal in the Complaint. (*Id.* ¶ 42.)

The remaining defendants are United States or Hong Kong corporations. Toy Quest Ltd. ("Toy Quest") is a Hong Kong corporation with its principal place of business in Hong Kong. (*Id.* ¶ 30.) Manley Toy Direct LLC ("MTD"),[1] also known as Worldwide Toy Direct, LLC, is a Hong Kong corporation with its principal place of business in Hong Kong. (*Id.* ¶ 31.) Toy Network, LLC ("Toy Network") is an Iowa company with its principal place of business in Iowa. (*Id.* ¶ 32.) MGS International, LLC ("MGS") is an Iowa company with its principal place of business in Iowa. (*Id.* ¶ 33.) Aquawood, LLC ("Aquawood") also known as Epic Studios, is a California limited liability corporation with its principal place of business in California. (*Id.* ¶ 34.) Dollar Empire LLC ("Dollar Empire") is a California corporation with its principal place of business in California. (*Id.* ¶ 35.) Banzai International Limited ("Banzai International") is a Hong Kong corporation with its principal place of business in Hong Kong. (*Id.* ¶ 36.) Park Lane Solutions Ltd. ("Park Lane") is a Hong Kong corporation with its principal place of business in Hong Kong. (*Id.* ¶ 37.) Jun Tai Co. Ltd. ("Jun Tai") is a Hong Kong corporation with its principal place of business in

---

[1] MTD is not the same entity as Manley Toys, Ltd. Manley Toys, Ltd. is not a Defendant in this matter. MTD has been deemed served, but has not yet entered an appearance, and did not participate in Rule 12 motion practice. (Order Granting Plaintiff's Motion for Defendant Manley Toy Direct, LLC to be Deemed Served, Nov. 1, 2019, Docket No. 155.)

Hong Kong.  (*Id.* ¶ 38.)  Winning Industrial Ltd. ("Winning") is a Hong Kong corporation with its principal place of business in Hong Kong.  (*Id.* ¶ 39.)  Wellmax Trading Ltd. ("Wellmax") is a Hong Kong corporation with its principal place of business in Hong Kong. (*Id.* ¶ 40.)

The Principals, the Executives, Toy Quest Ltd., MTD, Aquawood, Dollar Empire, Banzai International, Park Lane, and Magalhaes are collectively referred to as the "Civil Fraud Defendants" because Count I alleges Civil Fraud against these Defendants.  (*Id.* ¶¶ 43, 570–97.)

The Principals and Toy Quest Ltd., Jun Tai, Winning, and Wellmax are collectively referred to as the "Sham Litigation Defendants" because Count II alleges they abused the legal process by filing sham litigation.  (*Id.* ¶¶ 44, 599–618.)

The Civil Fraud Defendants and the Sham Litigation Defendants are collectively referred to as the "Civil Conspiracy Defendants" because Count III alleges both groups engaged in a civil conspiracy to hide their wrongdoing.  (*Id.* ¶¶ 45, 619–23.)

The Principals, the Executives, Toy Quest Ltd., MTD, Aquawood, Dollar Empire, Banzai International, Park Lane, Toy Network, and MGS are collectively referred to as the "RICO Defendants" because Counts IV and V allege violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and § 1962(d) against them.  (*Id.* ¶¶ 46, 624–38.)

## II.    FACTUAL BACKGROUND

The Court summarizes generally the facts alleged by Aviva below.  Additional alleged facts will be discussed as necessary in the specific sections analyzing the arguments.

Defendants are an allegedly interconnected group of individuals and corporations (referred to collectively as "SLB Enterprise"), primarily based in Hong Kong but also with addresses in California and Iowa, that sell toys and electronics in the United States.  (*Id.* ¶¶ 1–2, 101.)  Aviva alleges that the SLB Enterprise is run primarily by three individuals—Samson Chan, Lisa Liu, and Brian Dubinsky—who use the corporations interchangeably and shift resources among them to obfuscate legal proceedings. (*Id.* ¶¶ 1–8, 61.)

SLB Enterprise has been selling products in the United States through various corporate entities for over thirty years, with U.S. sales in some years totaling $100 million. (Compl. ¶ 52–54.)  For many years, Manley Toys, Ltd. was the most prominent corporation run by SLB Enterprise.  (*Id.* ¶¶ 76–77.)  That changed, however, on August 21, 2013, when Aviva was awarded a $8,588,931.59 judgment against Manley Toys, Ltd. in an action brought in the United States District Court for the District of Minnesota (the "Minnesota Judgment").  (*See* ECF No. 09-cv-1091, *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, Aug. 21, 2013, Docket No. 827.)  Aviva alleges that, shortly after the Minnesota Judgment, SLB Enterprise began to take measures to shutter Manley to avoid paying the judgment.  (Compl. ¶ 79.)  For example, Aviva alleges that SLB Enterprise began recording sales from Manley as sales by other SLB entities, including Toy Quest, Park Lane,

and Banzai, to avoid fulfilling the judgment while continuing to ensure SLB Enterprise profited from business in the United States. (*Id.* ¶¶ 183–236, 238, 246.) Aviva also alleges SLB Enterprise, specifically the Sham Litigation Defendants, conspired to abuse the legal process by submitting knowingly false affidavits and motions to the Court to obfuscate legal proceedings in the United States, buy time for the Principals to begin formal liquidation proceedings of Manley in Hong Kong, and evade Aviva's attempts to collect on its judgment. (*See, e.g.*, *id.* ¶¶ 300–56, 471, 590.) To date, Aviva reports that Manley has paid only a small fraction of the award. (ECF No. 09-cv-1091, *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, Mar. 21, 2019, Docket No. 1087; Compl. ¶ 640.)

Aviva also alleges that the corporate shell game SLB allegedly engaged in with Manley evidences an extensive pattern and practice from SLB, whereby when a United States Court enters judgment against one of its entities, it simply shifts that entity's resources to a new corporation to avoid satisfying the judgment. (*Id.* ¶ 177.)[2]

## III.   PROCEDURAL HISTORY

---

[2] *See, e.g.*, *Rennenger v. Aquawood, LLC*, C.A. No. 4:19-00123 (S.D. Iowa); *Roush v. Aquawood, LLC*, C.A. No. 4:19-00131 (S.D. Iowa); *Drake v. Aquawood, LLC*, C.A. No. 4:19-00132 (S.D. Iowa); *Miller v. Aquawood, LLC*, C.A. No. 4:19-00134 (S.D. Iowa); *Ackelson v. Aquawood, LLC*, C.A. No. 4:19-00135 (S.D. Iowa). Aviva sought to centralize these RICO actions in multidistrict litigation ("MDL"), but the Judicial Panel on Multidistrict Litigation denied the request. *See In re SLB Enter. Rico Litig.*, 412 F. Supp. 3d 1350, 1351 (U.S. Jud. Pan. Mult. Lit. 2019).

Plaintiff commenced this action on March 19, 2019, raising claims of fraud, abuse of process, civil conspiracy, and civil RICO violations.  (Compl. ¶¶ 570–97, 599–638.)

Defendants filed three separate motions to dismiss.  First, Defendants Banzai International Ltd., Park Lane, Toy Quest, Samson Chan, Alan Chan, Lisa Liu, MGS, and Toth filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6).  (Mot. to Dismiss, Sep. 10, 2019, Docket No. 80.)[3] Second, Defendants Aquawood, Magalhaes, and Dubinsky filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for a failure to state a claim upon which relief can be granted under Rule 12(b)(6).  (Mot. to Dismiss, Sep. 10, 2019, Docket No. 88.)  Third, Defendants Dollar Empire, Wu, and Wellmax also filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and a Rule 12(b)(6) motion for a failure to state a claim.  (Mot. to Dismiss, Sep. 11, 2019, Docket No. 97.)  Within each Motion, Defendants make additional arguments regarding the law-of-the-case doctrine, preclusion, and Rule 8 and 9(b).

## DISCUSSION

## I.      PERSONAL JURISDICTION

---

[3] Defendants MGS and Toth filed a notice of joinder in this Motion.  (Notice of Joinder, Sep. 10, 2019, Docket No. 94.)

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction.  "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003).  "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH,* 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)).  The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Epps,* 327 F.3d at 647.  For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the non-moving party.  *Westley v. Mann,* 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

### B. Law-of-the-case

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  Even so, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule

courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817 (quoting *Arizona*, 460 U.S. at 618 n. 8 (1983)).  The law-of-the-case doctrine can apply to related cases as well in certain circumstances, so long as the parties in the subsequent action were parties in the prior action.  *See Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 621 F.3d 697, 712 (8th Cir. 2010) (applying law-of-the-case to subsequent subrogation claim between insurers after final judgment was rendered on underlying coverage litigation dispute where parties in the subsequent action were defendants in the prior actions).

Samson Chan, Alan Chan, Lisa Liu, Dubinsky, Aquawood, Toy Quest, Park Lane, and Banzai International argue that the law-of-the-case doctrine prevents the Court from exercising jurisdiction over them because they appeared as non-party respondents in a post-judgment motion for sanctions in a prior action Aviva alleged against Manley Toys, Ltd.  (ECF No. 09-cv-1091, *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, *Inc.*, Mar. 21, 2019, Docket No. 1087.)

The Court disagrees. Unlike *Travelers*, the Defendants seeking to apply the law-of-the-case in this action were not parties in the prior action; instead, they were non-party respondents to a lone, post-judgment motion for monetary and injunctive sanctions for allegedly "aid[ing] and abet[ting]" a party to violate a post-judgment court order.  (Aviva Order at 9.)   Additionally, the Court found personal jurisdiction lacking over the

Defendants in the prior action because of status as non-parties; the Court did not otherwise conduct a personal jurisdiction analysis of any kind. (*Id.* at 9–11.)

Accordingly, it would be inappropriate to apply the law-of-the-case doctrine here, and the Court will deny Defendants' Motion to Dismiss for lack of personal jurisdiction to the extent it relies on the law-of-the-case doctrine.

### C. Claim and Issue Preclusion

In the same vein, Defendants argue claim and issue preclusion prevents the Court from exercising personal jurisdiction over them.

"The preclusive effect of a federal-court judgment is defined by claim preclusion and issue preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion prohibits relitigation of the same claims regardless of whether the claim raises the same factual or legal issues, whereas issue preclusion prohibits relitigation of an "issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal citations and quotations omitted).

#### 1. Claim Preclusion

Claim preclusion exists when "(1) the first suit [resulted] in a final judgment on the merits; (2) the first suit [was] based on proper jurisdiction; (3) both suits [involved] the same nucleus of operative fact; and (4) both suits [involved] the same parties or their

privies." *Kolb v. Scherer Bros. Fin. Servs. Co.*, 6 F.3d 542, 544 (8th Cir. 1993) (citations omitted). Here, Defendants' assertion of claim preclusion must fail for the same reason they successfully avoided jurisdiction in the prior action: they were not parties to that case. Defendants also do not claim to be privities with any of the parties in the prior action. Without such a relationship, there can be no claim preclusion.

Accordingly, the Court will deny Defendants' Motion to Dismiss for lack of personal jurisdiction to the extent it relies on claim preclusion.

### 2. Issue Preclusion

Issue preclusion exists when five elements are present:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;
> (2) the issue sought to be precluded must be the same as the issue involved in the prior action;
> (3) the issue sought to be precluded must have been actually litigated in the prior action;
> (4) the issue sought to be precluded must have been determined by a valid and final judgment; and
> (5) the determination in the prior action must have been essential to the prior judgment.

*Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007) (quoting *Anderson v. Genuine Parts Co.,* 128 F.3d 1267, 1273 (8th Cir. 1997)).

Here, the issue sought to be precluded—whether the Court has personal jurisdiction over Defendants as parties to the litigation in this RICO and tort action—is not the same as the issue in the prior action—whether the Court had personal jurisdiction

over non-parties for the purposes of imposing sanctions against them.  Accordingly, the Court will deny Defendants' Motion to Dismiss for lack of personal jurisdiction to the extent it relies on issue preclusion.

### D.  Specific Personal Jurisdiction

#### 1.  Applicable Law

"[T]he Court need only consider whether exercising personal jurisdiction over [Defendants] is consistent with due process."  *Pope*, 588 F. Supp. 2d at 1015.

When a federal statute does not explicitly grant personal jurisdiction, the Due Process Clause of the Fourteenth Amendment applies.  "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.,* 646 F.3d 589, 594 (8th Cir. 2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Eighth Circuit considers five factors in making a personal jurisdiction determination:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of the contacts with the forum state;
> (3) the relation of the cause of action to the contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc*., 53 F.3d 920, 922 (8th Cir. 1995) (citation omitted).

As the Court has stated previously,

> The five-factor test essentially boils down to three: (1) whether the quality and quantity of the defendants contacts with the forum State establish minimum contacts; (2) whether the litigation arises out of those contacts; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state.

*Ahlgren v. Muller*, 438 F. Supp. 3d 981, 987 (D. Minn. 2020) (citing 13 Wright & Arthur R. Miller, Federal Practice and Procedure § 1069 (4th ed.)).

When intentional torts are at issue, a defendant's allegedly tortious conduct outside the forum state may create sufficient minimum contacts with the forum state if, and only if, the plaintiff meets the *Calder* effects test by making a prima facia showing

-13-

that the acts were "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered-and which the defendant knew was likely to be suffered-[in the forum state]." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *see also Calder v. Jones*, 465 U.S. 783, 788–90 (1984). Even so, the *Calder* effects test does not displace the requirement that Defendants purposefully "tether" the effect of their actions to forum state itself, as opposed to people who just happen to live there. *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020) (quoting *Walden*, 571 U.S. at 290) (noting that "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (cleaned up)).

### 2.  Analysis

Aviva has adequately alleged an intentional tort (abuse of process) that Defendants' expressly aimed at Minnesota with knowledge that the harm was likely to be suffered here. Thus, if Defendants properly allege that Defendants "tether[ed] the effect of their actions to Minnesota," jurisdiction is proper. *Id.*

Aviva alleges Defendants' primarily tethered their contacts to Minnesota because: (1) Samson Chan, Liu, Alan Chan, and Dubinsky ("Principals") directed a sham motion to intervene by Jun Tai and Winning to be filed in prior Minnesota litigation, (Compl. ¶ 340); (2) the Principals each submitted one false statement or affidavit to the Court in the prior Minnesota litigation, (*Id.* at 88 (table)); and (3) the Principals conspired to create

fraudulent commercial transactions between Toy Quest Ltd. in Hong Kong and Target in Minnesota to prevent Aviva, a Minnesota company, from collecting on a judgment,  (*Id.* ¶¶ 193, 456–61, Ex. D, Mar. 19, 2019, Docket No. 5 & Ex. E, Mar. 19, 2019, Docket No. 6). The Court finds that the quality and quantity of these actions create a meaningful connection to Minnesota, thereby "tether[ing]" the effect of their allegedly intentional tortious actions to the State.  *Frost*, 951 F.3d at 981.  Moreover, at least some of Aviva's claims arise directly out of these contacts, satisfying the nexus element of specific personal jurisdiction.  Having found that sufficient minimum contacts and a nexus exist, it is presumptively reasonable "to require [a defendant] to submit to the burdens of litigation in the forum."  *Burger King*, 471 U.S. at 476.  Defendants fail to overcome this presumption.

Accordingly, the Court finds that it has specific personal jurisdiction over Defendants Samson Chan, Alan Chan, Lisa Liu, Dubinsky, and Toy Quest, and their Motion to Dismiss under 12(b)(2) is denied.

### E.  Conspiracy Jurisdiction

In addition to specific jurisdiction discussed above, Minnesota also recognizes conspiracy-based personal jurisdiction.[4]  *Yellow Brick Rd.,* 36 F. Supp. 3d at 864 (citing

---

[4] Although a number of Courts and the parties have apparently found that this conspiracy-based personal jurisdiction exists under *Hunt* in addition to specific jurisdiction, *Hunt* may also be read
*(footnote continued on next page)*

*Hunt v. Nevada State Bank*, 285 N.W.2d 292 (Minn. 1969)).  Conspiracy-based personal jurisdiction allows a Court to exercise personal jurisdiction over all conspirators if there are (1) sufficient minimum contacts with at least one co-conspirator; and (2) some overt act occurred inside the forum state to further the conspiracy.  *See id.* 866–67 (discussing conspiracy-based personal jurisdiction as requiring an overt act inside the forum).[5]

Aviva alleges that the Civil Conspiracy Defendants were engaged in a conspiracy.  Because the Court has specific personal jurisdiction over certain members of the alleged conspiracy as discussed above (Samson Chan, Alan Chan, Liu, Dubinsky, and ToyQuest), it can properly exert personal jurisdiction over the co-conspirator defendants because overt acts alleged to further the conspiracy, including the filing of a sham motion to intervene, false statements with the Court, and fraudulent sales with Target, occurred in Minnesota.

Accordingly, the Court finds that it has conspiracy-based personal jurisdiction over Toth, Wu, Magalhaes, Aquawood, Banzai International, Dollar Empire, Park Lane, and Wellmax, and their Motion to Dismiss under 12(b)(2) is denied.

---

as applying a form of the *Calder* effects test to exert specific personal jurisdiction over non-resident defendants engaged in a conspiracy.  *See, e.g.*, *Stangel v. Rucker*, 398 N.W.2d 602, 606 (Minn. Ct. App. 1986) (discussing *Hunt* and noting it is simply applying minimum contacts test).

[5] *See also Peterson v. Wallace*, 622 F. Supp. 2d 791, 801 (D. Minn. 2008) (noting that a "showing of minimum contacts [is necessary] when a conspiracy with Minnesota effects is alleged").

### F. RICO Jurisdiction

Aviva alleges RICO Act violations against the RICO Defendants.   Personal

Jurisdiction for civil RICO claims is subject to 18 U.S.C. § 1965, which states the following:

> (a) Any civil action or proceeding under this chapter against any person ***may be instituted*** in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that ***other parties*** residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

> . . .

> (d) All ***other process*** in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965 (emphasis added)).

Circuits courts are split as to whether § 1965(b) or (d) covers jurisdiction for RICO

co-conspirators, and the Eighth Circuit has not addressed the issue.  The Second, Fourth,

Seventh, Ninth, Tenth, and D.C. Circuits have held, and the Third Circuit has implied, that

§ 1965(b) allows for nationwide service of process, *see Brown v. Kerkhoff*, 504 F. Supp. 2d

464, 490 (S.D. Iowa 2007) (collecting cases), at least when (1) at least one RICO defendant

has sufficient minimum contacts with the forum under § 1965(a); and (2) the "ends of

justice" so require, *see PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998).  On the other hand, the Fourth and Eleventh Circuits have held § 1965(d) to be the operative service provision, resulting in more limited jurisdiction.  *See Brown*, 504 F. Supp. 2d at 490; *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008).

Based on a plain reading of the statute, the Court finds the majority rule more persuasive.  Section 1965(a) clearly states that a civil RICO action may be "instituted" so long as the Court has traditional personal jurisdiction over at least one defendant.  If so, the Court may exercise personal jurisdiction over "other [defendants]" if the "ends of justice" require it.  If § 1965(d) were the nationwide service clause, then sections (a) and (b) would be superfluous.  Indeed, the Courts in the Fourth and Eleventh Circuits that have held the nationwide service provision is found in § 1965(d) do so with little to no analysis.

In this case, the Court has already found that it has personal jurisdiction over every other RICO defendant except MGS; accordingly, the "ends of justice" would appear to support exercising personal jurisdiction over MGS as well.  *See Brown*, 504 F.Supp. at 495 (noting "the 'ends of justice' would be served by bringing all participants in a conspiracy together before one court where 'there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." (quoting *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)).

Accordingly, the Court finds that it has personal jurisdiction over MGS under § 1965(b) for the RICO claim and its Motion to Dismiss under 12(b)(2) is denied.

### G. Conclusion on Personal Jurisdiction

Thus, the Court has personal jurisdiction over all movant-Defendants as follows: specific personal jurisdiction over Samson Chan, Alan Chan, Lisa Liu, Dubinsky, and Toy Quest; conspiracy-based personal jurisdiction over Toth, Wu, Magalhaes, Aquawood, Banzai International, Dollar Empire, Park Lane, and Wellmax; and finally, RICO Jurisdiction pursuant to 18 U.S.C. § 1965(b) over MGS.

## II.   RULE 8

Samson Chan, Alan Chan, Liu, Toy Quest, Park Lane Solutions, and Banzai International, along with Dollar Empire, Michael Wu, and Wellmax Trading assert, essentially, that the Complaint is too long, too confusing, and contains too many counts, thus violating Rule 8's pleading standards.

Although the Complaint is long and confusing and contains many counts, it is well within the requirement of notice pleading.  *See, e.g., Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 899 (D. Minn. 2014) (explaining Rule 8's low bar and noting that the fact that defendants were able to file a detailed motion to dismiss is evidence that the claims were sufficiently pleaded.)

Accordingly, the Court will deny said Defendants' Motions to Dismiss as to Rule 8 insufficiency.

## III.   RICO CLAIMS

Aviva alleges that the RICO Defendants: (Toy Network, MGS, Banzai, Toth, Wu, Dollar Empire, MTD, Aquawood, Park Lane, Chan, Chan, Liu, Dubinsky, and Toy Quest) violated 18 U.S.C. §§ 1962(c) and 1962(d).

Section 1962(c) of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt*." Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).  RICO is "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Id.* (citation omitted).  To demonstrate a violation of § 1962(c), Aviva must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (citation omitted).  To demonstrate a violation of § 1962(d), Aviva must show conspiracy to violate §1962(c).

A RICO claim must be pleaded with particularity under Rule 9b.  *Id.*  Defendants, in various iterations and for various rationales, bring Motions to Dismiss under Rule 12(b)(6) for failure to state a claim.

### A. Time Bar

All Defendants argue that Aviva's RICO claims are time-barred.  Although statute-of-limitations assertions are usually an affirmative defense, dismissal for failure to state a claim based on statute of limitations can be appropriate if "the complaint itself establishes the defense."  *See Jessie v. Potter*, 516 F.3d 709, 713 n. 2 (8th Cir. 2008).

RICO claims are subject to a four-year limitations period.  *See Rotella v. Wood*, 528 U.S. 549, 553 (2000).  The limitations clock starts when the plaintiff discovered or should have discovered the injury.  *Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir. 2006).

With minimal variation, all Defendants argue that Aviva alleged similar claims in two earlier cases, and that as a result, Aviva must have been aware of the RICO injury for longer than four years.  In particular, Defendants argue that in 2009, 2011, and 2013, Aviva claimed that various subgroups of Defendants had hidden assets, were defrauding creditors, and were potentially evading judgments.

In each of these earlier cases, it appears that Aviva alleged that defendants were scheming in similar ways to the allegations now present in the RICO complaint.  However, Aviva plausibly alleged that the actual harm it suffered as a result of the RICO Defendants' bad behavior did not occur until 2015–2016, when the RICO defendants are alleged to have schemed away Manley's assets.  Even if the earlier cases demonstrate that Aviva knew Defendants were scheming, without the actual injury, the statute of limitations cannot begin to run.

In sum, Defendants' arguments that Aviva's injury began years earlier are reasonable, but Aviva's allegations of an injury in 2015-16 are plausible and the limitations bar is not so obvious on the face of the Complaint that dismissal is appropriate at this phase of the litigation.

Accordingly, the Court will deny Defendants' Motions to Dismiss as to the RICO Time-Bar issue.

### B. Rule 9(b)

Claims that sound in fraud, including RICO predicate acts, are subject to Rule 9(b)'s heightened pleading standard. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). Claims subject to Rule 9(b) require claims to be pleaded with particularity, "enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id.* To meet this particularity requirement, the "plaintiff must specifically allege the circumstances constituting fraud, including such matters as the time, place and contents of false representations[.]" *Id.* (citation and internal quotation marks omitted). In other words, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC,*

781 F.3d 1003, 1013 (8th Cir. 2015) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Based on the sections below outlining the fraud and RICO predicate acts for all Defendants—the who, what, when, where, and how—the Court finds that Plaintiffs have satisfied Rule 9(b).  Defendants incorrectly argue that Plaintiffs must also plead reliance to maintain their claims under Rule 9(b).  Defendants appear to conflate Rule 9(b)'s requirements with the proximate cause requirement.  Nonetheless, reliance is "not an element of a RICO claim predicated on [mail or wire] fraud."  *Schoedinger v. United Healthcare of Midwest, Inc.*, 557 F.3d 872, 878 (8th Cir. 2009).[6]

Accordingly, the Court denies Defendants' Motion to Dismiss the civil fraud and RICO predicate claims that sound in fraud based on Rule 9(b).

## C. Injury

Defendants Aquawood, Dubinsky, and Magalhaes argue that Aviva's injury is its inability to collect on the previous judgment and the costs associated with its judgment-collection efforts, and that these injuries are not cognizable under RICO.

A RICO injury must be "to business or property," "caused by a RICO violation," and be a "concrete financial loss, and not mere injury to a valuable intangible property

---

[6] *See also Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, No. CIV. 09-3681 JNE/JJK, 2012 WL 1694605, at *2 (D. Minn. May 15, 2012) (noting that reliance is unnecessary to maintain a RICO § 1962 claim).

interest." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (citation and internal quotation marks omitted).   There is some disagreement as to whether a loss related to an inability to collect on a judgment is sufficient to qualify as a RICO injury. However, it appears that the majority of courts to consider the issue agree that if (1) there is a valid judgment in hand and (2) plaintiffs actually attempted to collect and were thwarted by RICO activity, then loss of opportunity to collect a judgment suffices to state a RICO injury.   *See, e.g., Kaplan v. Reed*, 28 F. Supp. 2d 1191, 1205 (D. Colo. 1998) (articulating requirements for a valid RICO judgment-collection injury*)*.

The Court will follow the majority view, and finds that Aviva has sufficiently alleged an injury.   Therefore, the Court denies the Second Motion to Dismiss as to this ground.

### D. Predicate Acts – Individual Defendants

Various defendants allege that Aviva has not sufficiently pleaded two predicate acts for them individually.

Aviva must adequately allege the RICO elements as to each individual defendant. *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc*., 528 F.3d 1001, 1027–28 (8th Cir. 2008) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." (quotation omitted)).   Accordingly, Aviva must allege two predicate acts for each individual defendant.   Aviva may allege either that the individual committed the acts themselves, or that the individual "agreed to participate in the conduct of the enterprise

with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise." *United States v. Henley*, 766 F.3d 893, 908 (8th Cir. 2014) (citation omitted). "To constitute racketeering activity under RICO, the predicate acts must be related and must 'amount to or pose a threat of continued criminal activity.'" *Dahlgren v. First Nat. Bank of Holdrege*, 533 F.3d 681, 689 (8th Cir. 2008) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

### 1. Dubinsky

As to Dubinsky individually, the Complaint states that he:

- Was the sole US employee of Manley and that he is linked as a "legal consulting agent," "litigation representative," and contact person for Manley, MTD, Toy Quest and Aquawood. (Compl. ¶¶ 100-102.)
- Was involved in sham litigation on behalf of the SLB Enterprise. (*Id.* ¶¶ 135, 139, 141.)
- After a deposition in 2017, he told Aviva that he, the Chans, and others would always stay "one step ahead" of Aviva, and that they were adept at moving assets and business relationships, and had tricked Toys R Us into continuing to do business with him. (*Id.* ¶ 266.)
- Made false claims in declarations filed in court, including:
  - Aquawood and Dubinsky did not have control or decision-making authority over Manley (D. Minn. 2016)
  - Aquawood is an independent sales representative (D.N.J. 2017)
  - Aquawood and Dubinksy did not have control or decision-making authority over Manley (D. Minn. 2018). (*Id.* ¶ 471.)
- Gave false testimony in a 2017 deposition, including that:
  - He did not know the relationship between the alleged owner of Aquawood and the Chans
  - He did not know about Manley products

- He did not know about Manley's use of the Toy Quest name
- He did not know if he had ever been to Vancouver, despite having recently signed a declaration in Vancouver. (*Id.* ¶ 484.)
- He was involved or at least aware of the decision for Toy Quest to get involved in sham litigation in Tennessee. (*Id.* ¶ 492.)

Dubinsky argues that litigation activities cannot be the basis of RICO fraud claims and that perjury and false testimony are not RICO predicates. Although perjury alone is not a predicate act under RICO, courts have found that false litigation documents can support a mail/wire fraud RICO claim. *See United States v. Eisen*, 974 F.2d 246, 253 (2d Cir. 1992) ("[W]here, as here, a fraudulent scheme falls within the scope of the federal mail fraud statute and the other elements of RICO are established, use of the mail fraud offense as a RICO predicate act cannot be suspended simply because perjury is part of the means for perpetrating the fraud.").

Dubinsky instead points to *Luther v. Am. Nat. Bank of Minnesota*, No. CIV. 12-1085 MJD/LIB, 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012), *report and recommendation adopted*, No. CIV. 12-1085 MJD/LIB, 2012 WL 5465888 (D. Minn. Nov. 9, 2012) (collecting cases and finding that "Even if any litigation documents that were filed by the Defendant's counsel in the state court proceedings were false or fraudulent, as numerous courts around the country have held, such documents, generally, cannot be the basis of a RICO claim."). However, the distinction between the two lines of cases seems to be based on whether the RICO claim sounds entirely in perjury and false testimony, or whether the

false court filings are merely one aspect of the claim.  *See, e.g., Feld Entm't Inc. v. Am.*

*Soc. for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012)

(litigation activities can serve as RICO predicate acts as long as there are additional

allegations of racketeering activity).

Here, abusive litigation is only one element in the broader RICO conspiracy

allegations.  Because there are additional allegations of racketeering activity, the Court

finds that false litigation acts, in conjunction with the broader conspiracy, are sufficient

to constitute predicate acts.  Accordingly, the Court denies Dubinsky's Motion to Dismiss

on this ground.

### 2.  Lisa Liu

#### a.  Predicate Acts:

As to Liu individually, the Complaint states that she:

- Recommended that Manley should change the descriptions of their company documents so that they could avoid royalty payments to Six Flags.  (Compl. ¶ 154.)
- "[C]aused numerous letters to be sent by either mail or wire" between 2014-and 2016 from Hong Kong to the US, falsely telling retailers that Manley Toys Ltd. was changing its name to Toy Quest Ltd. and that Toy Quest Ltd. products have been in the market for over 18 years.  (*Id.* ¶¶ 190–92.)
- Liu is the "authorized signatory for Toy Quest in the bankruptcy COI.  (*Id.* ¶ 379.)
- Along with the other Principals, retained possession of Manley's document server and refuses to allow the Liquidators access.  (*Id.* ¶ 386.)

- Falsely claimed in a declaration that she was not aware of and made no decisions on behalf of Manley regarding post-judgment discovery.  (D. Minn. 2018).  (*Id.* ¶ 471.)

### b.  Extraterritoriality

Liu argues that Aviva's allegations regarding wire fraud must fail because Liu submitted the declaration in question from Hong Kong, and wire fraud does not apply extraterritorially.

RICO applies extraterritorially, "but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially. Put another way, a pattern of racketeering activity may include or consist of offenses committed abroad in violation of a predicate statute for which the presumption against extraterritoriality has been overcome."  *RJR Nabisco, Inc. v. European Cmty*., 136 S. Ct. 2090, 2102 (2016).  "The mail and wire fraud statutes do not indicate an extraterritorial reach."  *Bascuñán v. Elsaca*, 927 F.3d 108, 121 (2d Cir. 2019) (*citing European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 141 (2d Cir. 2014), *rev'd on other grounds*, 136 S.Ct. 2090).  As a result, to successfully plead mail or wire fraud as a RICO predicate, Aviva must show sufficient domestic conduct for the relevant acts.

Although the Eighth Circuit has not reached the issue, the Second Circuit analyzed the issue in detail and found that "a claim predicated on mail or wire fraud involves sufficient domestic conduct when (1) the defendant used domestic mail or wires in furtherance of a scheme to defraud, and (2) the use of the mail or wires was a core

component of the scheme to defraud," given a domestic injury. *Elsaca*, 927 F.3d 108 at

122. The court there announced that "while a defendant's location is relevant to whether

the regulated conduct was domestic, the mail and wire fraud statutes do not give way

simply because the alleged fraudster was located outside the United States." *Id.* at 123.

Here, Aviva has pleaded that Liu, while in Hong Kong, used the wires "in

furtherance of '[a] scheme or artifice to defraud, or for obtaining money or property by

means of false or fraudulent pretenses, representations, or promises.'" *Skilling v. United

States*, 561 U.S. 358, 369 n.1 (2010) (quoting 18 U.S.C. § 1341 (mail fraud); *id.* § 1343 (wire

fraud)). The injury is clearly domestic. Furthermore, Liu is alleged to have submitted the

false declaration to U.S.-based counsel, who then submitted it to U.S. courts, thus using

domestic wires.

Accordingly, the Court finds that the wire fraud allegation against Liu is not barred

by extraterritoriality.

### c. Witness Litigation Privilege

Similar to the litigation-related arguments presented by Dubinsky, Liu argues that

any false testimony that she gave is barred by the "witness litigation privilege." First, it

does not appear that the privilege would apply to a declaration, given the way the Fourth

Circuit described the privilege: "When a witness takes the oath, submitting his own

testimony to cross-examination, the common law does not allow his participation to be

deterred or undermined by subsequent collateral actions for damages." *Day v. Johns*

*Hopkins Health Sys. Corp.*, 907 F.3d 766, 771 (4th Cir. 2018). Liu does not suggest that there was any cross examination or other testimony in connection with the submission of the declaration. Furthermore, as discussed above, the Court finds that submission of false litigation documents, in conjunction with a broader RICO scheme, can be a predicate act. Accordingly, the Court declines to find any privilege over these statements.

Overall, the Court denies Liu's Motion to Dismiss on this ground.

### 3. Samson Chan

#### a. Predicate Acts

As to Samson Chan individually, the Complaint states that he:

- Made false claims in declarations filed in court, including:
  - That he had retired from day to day operations and from being the CEO of Manley, and was not aware of and made no decisions on behalf of Manley regarding post-judgment discovery. (D. Minn 2016). (Compl. ¶¶ 471, 586.)
  - That he had retired from day to day operations and from being the CEO of Manley, and was not aware of and made no decisions on behalf of Manley regarding post-judgment discovery. (D. Minn 2018). (*Id.* ¶¶ 471, 590.)
- Made false claims to a Hong Kong court, including that he did not know whether Manley was operating as Toy Quest Ltd. (*Id.* ¶ 488.)
- Refused to grant access to Liquidators to Manley document server. (*Id.* ¶ 525.)

#### b. USC § 152

First, Samson Chan argues that the Eighth Circuit has not found a violation of 18 USC § 152 to be a predicate RICO act, and thus the Court should not consider it as such.

Certain crimes are statutorily excluded as RICO predicates. 18 U.S.C. § 1961(1)(D) specifically excludes crimes under 18 U.S.C. § 157 as RICO predicates; however, that statute does not discuss § 152. Courts have found no bar to alleging § 152 crimes as predicate acts, and Samson Chan cites no contrary caselaw. *See, e.g., Cadle, Co. v. Flanagan,* 271 F. Supp. 2d 379, 385 (D. Conn. 2003). ("There is, however, no indication in the language of the statute that section 152 bankruptcy violations are excluded as well."). Samson Chan argues that because Aviva's allegations under § 152 could potentially fall under § 157, they should be excluded. However, it is not relevant that Samson Chan's actions could potentially fall into multiple categories; here, Aviva has pleaded violations of § 152, not § 157, so there is no bar.

Samson Chan additionally argues that § 152 does not apply extraterritorially because the statute does not specifically state that it has extraterritorial application. As discussed above, RICO applies extraterritorially, "but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *RJR Nabisco*, 136 S. Ct. at 2102. Here, Samson Chan is alleged to have provided false information, while in Hong Kong, to a Hong Kong court. However, the alleged intent of the crime was to impact domestic bankruptcy proceedings. The statute's concern is a fraudster's impact and conduct relating to title 11 proceedings in the United States. Following the same logic

set out in *Elsaca*, as long as the title 11 proceedings intentionally affected by the fraud or concealment were domestic, there is sufficient domestic conduct for the Court to find a RICO predicate.  927 F.3d at 122-23; *see also Stegeman v. United States*, 425 F.2d 984, 986 (9th Cir. 1970) ("To exclude concealments by debtors outside the United States from the statute's coverage would frustrate the statute's purpose by creating an obvious and readily available means of evasion.").

Finally, Samson Chan repeats the litigation activities and witness immunity arguments the Court rejected above, and which the Court rejects here for the same reasons.

Accordingly, the Court denies Samson Chan's Motion to Dismiss on this ground.

### 4.  Alan Chan

As to Alan Chan individually, the Complaint states that he:

- Was President and/or manager of Manley, and then moved to be manager of Park Lane.  (Compl. ¶¶ 93, 225.)
- Directed litigation on behalf of several of defendant companies.  (*Id.* ¶ 140.)
- Controls three of the give companies on the bankruptcy COI. (*Id.* ¶ 379.)
- Made false claims in declarations filed in court, including:
  - That Manley and Toy Quest Ltd kept separate accounts and did not commingle funds (N.D. Tex. 2015), (N.D. Ill. 2015), (M.D. Tenn. 2015).  (*Id.* ¶ 466.)
  - That he was not responsible for any Manley decisions regarding post-judgment discovery. (D. Minn. 2016), (D. Minn. 2018).  (*Id.* ¶ 471.)

Alan Chan repeats Liu and Samson Chan's arguments about litigation privilege and extraterritoriality. However, as discussed above, these are not bars to RICO predicate acts. Accordingly, the Court denies Alan Chan's Motion to Dismiss on this ground.

### 5. Michael Wu

As to Wu individually, the Complaint states that he:

- Caused Dollar Empire to allow Banzai to fraudulently use Dollar Empire's name on customs forms. (*Id.* ¶ 434.)
- Made false claims in declarations filed in court, including:
  - That Dollar Empire was just a customer of Toy Quest and Banzai (C.D. Cal. 2017). (*Id.* ¶ 471.)
  - That Dollar Empire was a consignee of Banzai International (C.D. Cal. 2017). (*Id.*)
  - That Dollar Empire had no interest in consigned goods and received no revenue from Banzai. (C.D. Cal. 2018). (*Id.*)

Wu makes similar arguments about the witness litigation privilege and litigation activities that the Court denied above. Accordingly, the Court denies Wu's Motion to Dismiss on this ground.

### 6. Toth

Although Toth joined the Motion to Dismiss submitted by Banzai, Park Lane, Toy Quest, Liu, and the Chans, he does not explain how or why the Complaint is deficient as to the RICO predicates, other than merely asserting that it is. The burden is on the party making the motion, and Toth did not carry the burden.

Without more, the Court will deny Toth's Motion to Dismiss.

**E.  Predicate Acts – Corporate Defendants**

The corporate defendants make similar arguments to the individual defendants, For the most part, Aviva appears to rely on agency theory to hold the corporate defendants liable for their employees.  *See, e.g*., *Gunderson v. ADM Inv'r Servs., Inc*., No. C96-3148-MWB, 2001 WL 624834, at *19 (N.D. Iowa Feb. 13, 2001) (finding that when a corporate person's agents promote the scheme, resulting in a benefit for the company, the corporate person may be held vicariously liable under RICO).

**1.  Toy Quest**

The Complaint alleges that Toy Quest:

- Sent numerous letters to be sent by either mail or wire between 2014-and 2016 from Hong Kong to the US, falsely telling retailers that Manley Toys Ltd. was changing its name to ToyQuest Ltd. and that Toyquest Ltd. products have been in the market for over 18 years.  (Compl. ¶¶ 190–92, 458, 467.)
- Was merely an alter-ego of Manley. (throughout; *see, e.g., id.* ¶ 229.)
- Defrauded retailers into paying Toy Quest instead of Manley to avoid collection efforts.  (*Id.* ¶¶ 214–16.)
- Submitted a fabricated affidavit from a fictitious person.  (*Id.* ¶¶ 312–14.)
- Improperly intervened in court proceeding in the Middle District of Tennessee without basis.  (*Id.* ¶¶ 325–28.)
- Made false claims in declarations filed in court, including:

- o That Manley and Toy Quest kept separate accounts and did not commingle funds (N.D. Tex. 2015) (N.D. Ill. 2015) (M.D. Tenn. 2015). (*Id.* ¶ 466.)
  - o That Aviva was in violation of bankruptcy stay (D. N.J. Bankr. 2016). (*Id.* ¶ 471.)
  - o That Dollar General did not owe money to Manley but instead to Toy Quest. (M.D. Tenn. 2017). (*Id.*)
  - o False descriptions of Toy Quests interactions with Dollar General and Manley (D.NJ Bankr. 2017). (*Id.*)
- Submitted false claims for proof against Manley's estate in bankruptcy. (*Id.* ¶¶ 495-501.)

Even without considering agency theories of corporate liability, Aviva has alleged

sufficient predicate acts for Toy Quest.

Accordingly, the Court denies Toy Quest's MTD on this ground.

### 2. Aquawood

The Complaint alleges that Aquawood:

- Made false claims in declarations filed in court, including:
  - o Aquawood and Dubinsky did not have control or decision-making authority over Manley (D. Minn. 2016). (*Id.* ¶ 471.)
  - o Aquawood is an independent sales representative (D.N.J. 2017). (*Id.*)
  - o Aquawood and Dubinksy did not have control or decision-making authority over Manley (D. Minn. 2018). (*Id.*)
- Held Manley books and records and failed to turn them over to Manley Liquidators. (*Id.* ¶ 523.)
- Colluded in falsely labelling Dollar Empire a "consignee." (*Id.* ¶ 530.)

Even without considering agency theories of corporate liability, Aviva has alleged sufficient predicate acts for Aquawood.   Accordingly, the Court denies Aquawood's motion to dismiss on this ground.

### 3.  Dollar Empire

The Complaint alleges that Dollar Empire:

- Fraudulently made payments to Toy Quest in Hong Kong. (*Id.* ¶ 463.)
- Caused Dollar Empire to allow Banzai to fraudulently use Dollar Empire's name on customs forms.  (*Id.* ¶ 434.)
- Made false claims in declarations filed in court, including:
    - That Dollar Empire was just a customer of Toy Quest and Banzai (C.D. Cal. 2017).  (*Id.* ¶ 471.)
    - That Dollar Empire was a consignee of Banzai International (C.D. Cal. 2017).  (*Id.* ¶ 530.)
    - That Dollar Empire had no interest in consigned goods and received no revenue from Banzai.  (C.D. Cal. 2018). (*Id.* ¶ 471.)

Even without considering agency theories of corporate liability, Aviva has alleged sufficient predicate acts for Dollar Empire.  Accordingly, the Court denies Dollar Empire's motion to dismiss on this ground.

### 4.  Park Lane

The Complaint alleges that Park Lane:

- Made false claims in declarations filed in court, including:
    - That Park Lane was not aware of and did not make any decisions on behalf of Manley regarding post-judgment discovery (D. Minn. 2018).  (*Id.* ¶ 471.)

-36-

- Is an alter-ego/shell for Manley.  (*Id*. ¶ 224.)
- Participated in allowing Dollar Empire to coordinate shipments to conceal assets.  (*Id.* ¶ 446.)

This is a sparse set of pleadings, but the Court finds it to be enough to pass the motion to dismiss stage.  Accordingly, the Court denies Park Lane's motion to dismiss on this ground.

### 5. Banzai International

The Complaint alleges that Banzai International:

- Falsely listed Dollar Empire as its importer of record or consignee in order to conceal assets.  (*Id.* ¶ 530.)
- Withheld/concealed information regarding post-judgment interrogatories.  (*Id.* ¶ 582.)
- Is a Manley alter-ego developed in 2016 to avoid creditors. (*Id.* ¶¶ 229-31.)

Likewise, though the allegations could be more robust, the Court finds them sufficient to pass the motion to dismiss stage.  Accordingly, the Court denies Banzai International's motion to dismiss on this ground.

### 6. MGS

Although MGS joined the Motion to Dismiss submitted by Banzai, Park Lane, Toy Quest, Liu, and the Chans, it does not explain how or why the Complaint is deficient as to the RICO predicates, other than merely asserting that it is.  The burden is on the party

making the motion, and MGS did not carry the burden.  Accordingly, the Court will deny

MGS's Motion to Dismiss.

### F.  Proximate Cause

Defendants appear to argue that Aviva must show that each defendant took

actions that proximately caused its alleged injury.

The Supreme Court has clarified that RICO requires proximate cause, but does not

appear to require plaintiffs plead proximate cause to each predicate act, or necessarily

even as to each defendant.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 276 (1992)

("We hold that, because the ***alleged conspiracy*** to manipulate did not proximately cause

the injury claimed, SIPC's allegations and the record before us fail to make out a right to

sue petitioner under § 1964(c).") (emphasis added).[7]  The Court is not aware of any case

supporting Defendants' stringent interpretation.

Aviva has sufficiently alleged proximate cause to link the conspiracy (Defendants

working together to fraudulently shuffle and remove assets) to their injury of being

unable to recover on a judgment.   Accordingly, Aviva has demonstrated sufficient

proximate cause to survive a motion to dismiss and deny Defendants' Motion on this

ground.

---

[7] *See also, e.g.*, *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 953 (8th Cir. 1999)
(noting that "appellant's injuries were not proximately caused by the employer's racketeering
activity").

### G. Conclusion

In sum, the Court will deny Defendants' Motions to Dismiss the RICO claims for failure to state a claim.

## IV.   ABUSE OF PROCESS

Wellmax argues that the abuse of process claim is time-barred because the statute of limitations for abuse of process is two years, and the abuses were alleged to have occurred in December 2015.

Although statute-of-limitations assertions are usually an affirmative defense, dismissal for failure to state a claim based on statute of limitations can be appropriate if "the complaint itself establishes the defense." *See Potter*, 516 F.3d at 713 n. 2. "Minnesota has not expressly decided the limitation period for abuse of process actions." 28 Minn. Prac., Elements of an Action § 1:6. The only federal case to consider the issue expressly declined to determine whether the limitations period was two years or six. *See Meyer v. Ekola*, No. 15-CV-2564 (SRN/HB), 2017 WL 9274728, at *3 (D. Minn. May 26, 2017), *report and recommendation adopted*, No. 15-CV-2564 (SRN/HB), 2017 WL 4040996 (D. Minn. Sept. 13, 2017), *aff'd sub nom. Meyer v. Haeg*, 762 F. App'x 353 (8th Cir. 2019) (finding that "the abuse of process claim is time-barred, whether under the six-year statute of limitations of Minn. Stat. § 541.05, subd. 1, or the two-year statute of limitations of Minn. Stat. § 541.07").

Here, because the limitations period itself is not clear, the defense is not obvious on the face of the complaint.  For the purposes of this Motion, the Court will assume that the limitations period is the more generous six years afforded by the catch-all provisions of Minn. Stat. § 541.05, subd. 1.  Accordingly, the Court will deny Wellmax's Motion to Dismiss on statute of limitations grounds.

## V.   CIVIL CONSPIRACY

Aviva alleges civil conspiracy claims based on the underlying torts of Fraud and Abuse of Process claims against all Defendants.

To establish a civil conspiracy claim under Minnesota law, "a claimant must show that two or more people worked together to accomplish (1) an unlawful purpose or (2) a lawful act by unlawful means."  *Robert Allen Taylor Co. v. United Credit Recovery, LLC*, No. A15-1902, 2016 WL 5640670, at *11 (Minn. Ct. App. Oct. 3, 2016) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950)). "A conspiracy claim is properly dismissed when not supported by an underlying tort." *Id.* (citing *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. App. 1997)).

Because the Court declined to dismiss the underlying fraud and abuse of process tort claims, there remains sufficient basis to support Aviva's civil conspiracy claims. Accordingly, the Court will deny Defendants' Motion to Dismiss as regards the civil conspiracy claim.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendants' Motions to Dismiss [Docket Nos. 80, 88, and 97] are

**DENIED**.


DATED:  October 5, 2020
at Minneapolis, Minnesota.

                                                          JOHN R. TUNHEIM
                                                          Chief Judge
                                         United States District Court