UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| ASI, INC.,<br><br>            *Plaintiff*,<br>     v.<br><br>AQUAWOOD LLC, *et al.*,<br><br>            *Defendants*. | Case No. 19-cv-00763-JRT-HB |

**STIPULATION AND ORDER CONCERNING THE PRODUCTION OF
PHYSICALLY STORED AND ELECTRONICALLY STORED INFORMATION**

WHEREAS, counsel for Plaintiff and Defendants (collectively, the "Parties," and each, a "Party") have met and conferred regarding application of the discovery process set forth in the Federal Rules of Civil Procedure and the local rules of this Court;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulation and Order Concerning the Production of Physically Stored and Electronically Stored Information ("Stipulation and Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving documents and Electronically Stored Information ("ESI") and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of documents and ESI without Court intervention;

IT IS HEREBY ORDERED that:

**I.     GENERAL PROVISIONS**

1.     **Scope.**

a) This Stipulation and Order shall govern the discovery of documents and ESI as described in FED. R. CIV. P. 26, 33, and 34;

b) Nothing in this Stipulation and Order shall be construed to supersede or alter any provision of any Federal or Local Rule;

c)  All Parties are bound by and subject to the terms of this Stipulation and Order;

2.  **Proportionality.**  The proportionality principle set forth in Fed. R. Civ. P. 26(b)(1) and accompanying Committee Notes shall be applied in all matters related to discovery of documents and ESI, including without limitation, the identification, preservation, collection, review, analysis, processing, and production of such information.

3.  **Preservation of Potentially Relevant Information.**  Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

4.  **Cooperation.**  The Parties and their counsel will work cooperatively during all aspects of discovery to ensure that the costs of discovery are proportional to what is at issue in the case, and nothing in this Stipulation and Order is intended to preclude the Parties from objecting to any discovery on the grounds that it is not proportional.  The failure of a Party or their counsel to cooperate in good faith will be relevant in resolving any discovery disputes and determining who shall bear the costs of discovery.

5.  **Prioritized Searching.**

a)  **Data Sources that are Reasonably Accessible.**  The Parties agree that any search for potentially relevant documents and ESI shall initially involve searching for such documents in all reasonably accessible data sources, except as otherwise agreed by the Parties.

b)  **Data Sources that are Not Reasonably Accessible.**  Data sources that are not reasonably accessible because of undue burden or cost shall not be considered for search until the search(es) described in the preceding subparagraph have been completed.  Requests for information expected to be found in data sources identified as not reasonably accessible because of undue burden or cost must be narrowly focused with factual bases supporting them.  Where such requests are made, the Parties will meet and confer and attempt in good faith to reach agreement as to the conditions of any such search, including whether and to what extent cost-sharing is appropriate.  Sources that are considered less accessible due to undue burden or cost include, but are not limited to:

Backup tapes and archives; backup data that is substantially duplicative of data that is more accessible elsewhere; file fragments; deleted space; slack space; fragmented space; unallocated data on hard drives; residual data; ghost files; shadowed files; swap files; random access memory or other ephemeral data; data contained on users' private computers, social media accounts or email accounts not issued or controlled by Defendants; on-line access data such as temporary internet files, internet histories, internet usage caches, and cookies; ephemeral data; other forms of ESI whose preservation or collection

requires extraordinary affirmative measures that are not utilized in the ordinary course of business; historical data in metadata fields that are frequently updated automatically; server, system, or network logs; archival data; IoT devices; electronic data temporarily stored by laboratory equipment or attached to electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; hard copy documents that exist in electronic format; and legacy software that is no longer maintained by a Party.

The Parties may contend that other sources of data are not reasonably accessible due to undue burden or cost and reserve the right to supplement this list if needed.

c)     **Proprietary Databases.**  Each Party agrees to identify the proprietary databases in its possession, custody, or control that may contain relevant documents and ESI.  The Parties agree to meet and confer about whether and in what format such relevant documents and ESI should be searched for and produced.  If the Parties cannot reach agreement, any dispute may be presented to the Court.

6.     **Search Methodology.**

a)     The Parties expect to employ one or more search methodologies, including possibly but without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI, including email.  The Parties will meet and confer and attempt in good faith to reach agreement regarding:

(i)     methods of searching and, if applicable, the words, terms, and phrases to be searched; and

(ii)     custodians and other sources from which ESI will be collected and searched.

b)     The inability of the Parties to agree on a search methodology after meeting and conferring in good faith does not excuse any Party from complying with its obligation to produce documents in accordance with the Federal and Local Rules.

c)     If a final search protocol has been agreed to and executed, a requesting Party may, in good faith, seek to expand the scope of the search subject to the limitations set forth in Fed. R. Civ. P. 26(b).  Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion, including whether and to what extent cost-sharing is appropriate.  If the Parties cannot reach agreement, any dispute may be presented to the Court.

7.     **Deduplication.**

a)     A Party is only required to produce one single copy of a responsive document.  Parties will deduplicate stand-alone documents or entire document families

3

horizontally (also referred to as globally) across custodians. Documents are exact duplicates if they have matching MD5 or SHA-1 hash values. Duplicate custodian information shall be retained and produced as part of the load file/field.

b)      Parties also may deduplicate stand-alone documents or entire document families using near-duplicate identification technology, provided, however, that only documents identified by such technology as 100% near-duplicates shall be deduplicated.  For purposes of this paragraph, 100% near-duplicates are documents that have identical text content, embedded files, and attachments. 100% near-duplicates may have different MD5 or SHA-1 hash values.

c)      When comparing document families, if a parent document is an exact duplicate or 100% near-duplicate but one or more attachments or embedded files are not exact duplicates or 100% near-duplicates, neither the attachments nor embedded files, nor the parent document, will be deduplicated.

d)      Attachments to emails shall not be eliminated from their parent emails. Where a stand-alone document is an exact duplicate or 100% near-duplicate of an email attachment, the email attachment must be produced and the stand-alone document may be deduplicated.

**8.      Known Software Files.**  Known software files identified in the National Software Reference Library database maintained by the National Institute of Standards and Technology need not be collected, processed, reviewed or produced.

**9.      Email Threads.**  Where individual email messages are part of a single "thread," a Party shall produce all component/lesser-inclusive messages in the thread. However, where individual email messages are part of a single "thread," and where the thread contains emails that are redacted on the basis of privilege, to avoid the burden and expense of redacting multiple documents, a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

## II.    PRODUCTION OF HARDCOPY DOCUMENTS

**1.      Format.** Hardcopy documents shall be scanned as single page, Group IV compression black and white TIFF images using a print setting of at least 300 dots per inch (DPI).  Each image shall have a unique file name, which is the Bates number of the first

4

page of the document. Document level OCR text files will be provided. Each file will be named using the bates number of the first page of the document (e.g., a four-page document that starts with ABC0000001 will bear the name ABC0000001.TXT). To the extent technically available through the use of purely automated methods, and provided that no extra costs be incurred, original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

**2.    Coding.**  The following information shall be produced and provided in the data load file at the same time that the TIFF images are produced.  Each metadata field shall be labeled as listed below:

(a)    Beginning Production Number (ProdBeg),
(b)    Ending Production Number (ProdEnd),
(c)    Custodian/Source,
(d)    Confidentiality,
(e)    Attach Range

**3.    Unitizing of Documents.** When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized to the extent reasonably feasible). The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

**4.    Load Files.**  The Parties shall produce load files in an industry standard format. If there are any disputes concerning the production of load files, the Parties shall meet and confer in attempt to resolve these issues.

## III.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION

**1.    Production Format for ESI.**

a)    Documents will be produced as TIFF images. Each image shall have a unique file name, which is the Bates number of the first page of the document. As indicated below, native files will be produced in lieu of TIFF files for spreadsheets, media files, and other file types for which it is impractical to produce TIFF images, and will be produced in their complete original condition.  Documents will be produced with the metadata fields listed below exported into a delimited load file for Relativity, Concordance, and such other industry-standard electronic discovery platforms as the Parties may agree upon. All TIFFs produced by any Party in this matter will be single page Group IV TIFF format, 300 dpi quality or better. Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension.  TIFF documents shall be produced in black and white in the first instance. If a document contains color and that color is necessary to decipher the meaning, context, or content of the document, the producing Party shall honor reasonable requests for the

production of a color image of the document. Nothing in this Stipulation and Order shall be construed to impose an obligation on any Party to add functionality to a document where such functionality does not exist in the document's native format. It shall be the burden of the Party claiming that documents lack functionality or do not exist in a native format to establish such facts and related positions shall be conveyed under oath.

b)    **Metadata.** The following metadata fields will be produced in a delimited text file to the extent the information exists:

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting Bates # of all attachment(s) | Starting Bates # of all attachment(s) | Starting Bates # of all attachment(s) |
| ProdEndAttach | Integer - Text | Ending Bates # of all attachment(s) | Ending Bates # of all attachment(s) | Ending Bates # of all attachment(s) |
| Attachbates | Integer - Text | Bates # range of document and all attachments | Bates # range of document and all attachments | Bates # range of document and all attachments |
| BegAttach | Integer - Text | Starting Bates # for each individual attachment | Starting Bates # for each individual attachment | Starting Bates # for each individual attachment |
| EndAttach | Integer - Text | Ending Bates # for each individual attachment | Ending Bates # for each individual attachment | Ending Bates # for each individual attachment |
| AttachNames | Integer - Text | Name of each attachment | Name of each attachment | Name of each attachment |

6

| AttachCount | Integer - Text | Number of attachments | Number of attachments | Number of attachments |
|---|---|---|---|---|
| PageCount | Integer - Text | Number of pages | Number of pages | Number of pages |
| ParentMSGID | Integer - Text | Identification of the unique identifier of the parent message/ document | Identification of the unique identifier of the parent message/ document | Identification of the unique identifier of the parent message/ document |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| DupCustodians | Text | | All other natural person(s), group(s), department(s) entity(ies), etc. in whose possession the document was found if duplicate versions of the document are not produced | All other natural person(s), group(s), department(s) entity(ies), etc. in whose possession the document was found if duplicate versions of the document are not produced |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph | | | Recipients of message |
| CC | Text – paragraph | | | Copied recipients |

7

| BCC | Text – paragraph | | | Blind copied recipients |
|---|---|---|---|---|
| Subject | Text - paragraph | | | Subject of message |
| Date_Sent | Date | | | Date message sent |
| Time_Sent | Time | | | Time message sent |
| FileName | Text - paragraph | | Name of original file | Name of original file |
| FileExtension | Text | | Extension of original file | Extension of original file |
| FileSize | Integer - Text | | Size of the file | Size of the file |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Date_Created | Date/Time | | Date file was created | |
| Time_Created | Date/Time | | Time file was created | |
| Date_LastMod | Date/Time | | Date file was last modified | |
| Time_LastMod | Date/Time | | Time file was last modified | |
| LastModifiedBy | Text | | Identity of last individual | |

| | | | modifying document | |
|---|---|---|---|---|
| Date_LastAcc | Date/Time | | Date file was last accessed | |
| Time_LastAcc | Date/Time | | Time file was last accessed | |
| LastAccessedBy | Text | | Identify of last individual accessing document | |
| Sibling ID | Text | | Group ID of text / message (for mobile device data) | |
| Mobile_Origin | Text | | Sent or received info (for mobile device data) | |
| Replier | Text | | Person responding to twitter post (for mobile device data) | |
| Hashtag | Text | | Hashtag information (for mobile device data) | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Hash value | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |

9

| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
|---|---|---|---|---|
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Redacted | Text | Any redaction made to the document | Any redaction made to the document | Any redaction made to the document |
| Redacted Reason | Text - paragraph | Explanation for redaction | Explanation for redaction | Explanation for redaction |

c)      **Load File.** The Parties shall produce load files in an industry standard format. Prior to production, parties will communicate the load file format. If there are any disputes concerning the production of load files, the Parties shall meet and confer in attempt to resolve these issues.

d)      **Text Files.** For each document, a document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files (e.g., ABC0000001.TXT).

Documents for which text cannot be extracted will be produced with OCR. Document level OCR text files will be provided. Each file will be named using the bates number of the first page of the document (e.g., a four-page document that starts with ABC0000001 will bear the name ABC0000001.TXT).

With respect to documents containing redacted text, no text will be provided for the redacted portion. OCR will be provided for the un-redacted portions of the documents.

e)      **Attachments.** The Parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The Parties will

meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent e-mail.

        f)    **Embedded Objects.** Embedded files need not be produced as separate attachments to a document provided the content of the embedded file is displayed in the parent document.

        g)    **Bates Numbers.** The producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size.  The Bates number must not obscure any part of the underlying image.  If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image. If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (e.g. unsupported file format, file corruption, inaccessible password-protected document), those technical problems should be identified and disclosed to the receiving party by production of a Bates-labeled slip sheet that states "Technical issue - File cannot be processed."

        h)    **ESI Impractical to Produce in TIFF Format.** As noted above, certain categories of ESI are more easily produced in native format and therefore will not be produced in TIFF format. These file types include, but are not limited to, spreadsheet files such as Microsoft Excel (*.xls, *.xlsx, *.csv), database files including Microsoft Access (*.mdb), and multimedia files including audio and video files. Native files will be produced with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed bates number and endorsed confidentiality designation.

        i)    **Enterprise Databases.**  To the extent that any Party requests information that is stored in an enterprise database or database management system (for example, Oracle, SQL Server, DB2), the Parties will agree upon production of data from such sources in existing report formats, or report formats that can be developed without undue burden or cost.

## IV.   OTHER TERMS

        1.    **Use of ESI Produced in Native Format.**  Should any document produced in native format be printed to TIFF image or hard copy, the unique production number and any applicable confidentiality designation shall be placed on each page of such TIFF image or hard copy.  The Parties shall meet and confer prior to trial to come to agreement on the format in which native files shall be used at trial.

        2.    **Authenticity and Admissibility.** Nothing in this protocol shall be construed to affect the authenticity or admissibility of any document or ESI.  All objections to the

authenticity or admissibility of any document or ESI are preserved and may be asserted at any time.

**3.    Redactions.** If documents that the Parties have agreed to produce in native format require one or more redactions, those documents will either be converted to TIFF format to apply the redaction or redacted using a native redaction tool and produced as redacted natives. Documents that have been redacted will be identified in the "Redacted" and "Redacted Reason" fields listed in the above table and therefore need not be identified on a privilege log.

**4.    Confidential Information.**  The Parties incorporate the provisions of any protective order(s) concerning protection of confidential information that may be entered by the Court in these proceedings (the "Protective Order").  For the avoidance of doubt, nothing in this Stipulation and Order shall supersede or alter any provision of the Protective Order.

a)    The confidentiality treatment level for any item will be provided in the field entitled "Confidentiality." For items with no confidentiality requirements, the field will be left blank.

b)    The producing Party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item.  Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number. For documents produced in native format, a one-page slip sheet will be produced stating that the document is produced in native format. This slip sheet will also indicate the confidentiality designation of the native file.

**5.    Data Storage & Destruction.**  At all times during the pendency of this action, data produced by the Parties shall be hosted in an ISO 27001-certified environment. The Parties shall supply proof of ISO 27001 certification upon written request by the opposing Party. At the conclusion of this action, all documents and ESI produced by either Party shall be treated in accordance with the Protective Order.

**6.    Reimbursement of Costs.**  This Stipulation and Order shall have no effect on any producing Party's right, if any, to seek reimbursement for costs associated with the collection, review, or production of documents or ESI.

**7.    Reservation of Rights.**  Nothing in this Stipulation and Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.  Nothing in this Stipulation and Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third-parties to object to a subpoena.

**8.    Privileged or Trial Preparation Materials.**

a)    Some of the ESI and documents in this action may contain material that is subject to the attorney-client privilege, work-product doctrine, or other applicable privileges or immunities and is therefore protected from disclosure ("Protected Material"). The Parties acknowledge that, despite each Party's best efforts to conduct a thorough pre-production review of all ESI and other documents, given the amount of information likely to be exchanged in this case, some Protected Material may be inadvertently disclosed to the other Party during the course of this litigation. Such disclosed Protected Material shall be handled in accordance with the Protective Order.  Counsel for the Parties recognize that the applicable rules of professional conduct impose obligations on the Party requesting discovery, with respect to materials that they know or reasonably should know have been produced inadvertently.

b)    The Parties agree that, for documents withheld from production on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the producing Party will prepare a privilege log in compliance with Fed. R. Civ. P. 26(b)(5).  Each item listed on the privilege log shall be assigned a unique Privilege Log ID number for ease of identification.  Where an e-mail chain is withheld from production under a claim of privilege, each e-mail in the chain must be logged.

**9.    Protective Order and Pretrial Scheduling Order Govern.**    This ESI Protocol is intended to supplement, not supersede, any applicable Protective Order and the Pretrial Scheduling Order entered by the Court on November 6, 2020.  To the extent the guidance or language in this ESI Protocol conflicts with an applicable Protective Order or the Pretrial Scheduling Order, the Protective Order or Pretrial Scheduling Order governs.

**10.    Continuing Obligation to Meet and Confer.** To expedite discovery of paper and electronic evidence, and reduce each Parties' costs, the Parties will informally cooperate and discuss procedures or protocols to facilitate identification, retrieval and production of discovery documents. The Parties will work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the Court. Issues shall be raised promptly in writing, and the Parties shall have good faith discussions to attempt to resolve the matter. The responsibility shall be continuing, unless otherwise ordered by the Court.

SO STIPULATED AND AGREED, this 23rd day of November, 2020:

13

Dated: November 23, 2020        /s/  *Shelli L. Calland*

Stephen A. Weisbrod (admitted *pro hac vice*)
Shelli L. Calland (admitted *pro hac vice*)
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Avenue, NW
Suite 600
Washington, DC 20036
Tel:  (202) 499-7900

*and*

Keith M. Sorge (MN Bar No. 0326665)
ARTHUR, CHAPMAN, KETTERING,
  SMETAK & PIKALA, P.A.
500 Young Quinlan Building
81 South Ninth Street
Minneapolis, Minnesota 55402-3214
Tel:  (612) 339-3500

***Attorneys for Plaintiff ASI, Inc.***

**STINSON LLP**

Dated:  November 23, 2020      /s/ *James A. Schoeberl*

Stephen E. Schemenauer (#388566)
James A. Schoeberl (#398248)
Emily Asp (#399965)
50 South Sixth Street, Suite 2600
Minneapolis, MN  55402
Telephone: (612) 335-1500
steve.schemenauer@stinson.com
james.schoeberl@stinson.com

**COUNSEL FOR DEFENDANTS BANZAI
INTERNATIONAL LTD., CHAN MING
YIU a/k/a SAMSON CHAN, LIU YI MAN
a/k/a LISA LIU, PARK LANE
SOLUTIONS LTD., TOY QUEST LTD.,
AND CHAN SIU LUN a/k/a ALAN CHAN**

14

**LOCKRIDGE GRINDAL NAUEN PLLP**

Dated:  November 23, 2020

 /s/ David W. Asp
David W. Asp
Kate M. Baxter-Kauf
100 Washington Avenue S., Suite 2200
Minneapolis, MN  55401-2159
Telephone: (612) 339-6900
dwasp@locklaw.com
kmbaxter-kauf@locklaw.com

**COUNSEL FOR DEFENDANTS MGS
INTERNATIONAL, LLC; AND RICHARD
TOTH**

**BELIN MCCORMICK, PC**

Dated:  November 23, 2020

 /s/ Matthew D. Callanan
Matthew D. Callanan
Steven H. Locher (admitted *pro hac vice*)
666 Walnut Street, Suite 2000
Des Moines, IA  50309
Telephone: (515) 283-4639
mdcallanan@belinmccormick.com
shlocher@belinmccormick.com

**COUNSEL FOR DEFENDANTS
AQUAWOOD, LLC; BRIAN DUBINSKY;
AND PETER MAGALHAES**

**CHESTNUT CAMBRONNE, P.A.**

Dated:   November 23, 2020

 /s/ Dennis B. Johnson
Dennis B. Johnson
100 Washington Avenue South
Suite 1700

15

Minneapolis, MN  55401
Telephone: (612) 339-7300
djohnson@chestnutcambronne.com

Mark E. Weinhardt (admitted *pro hac vice*)
Elisabeth A. Archer (admitted *pro hac vice*)
THE WEINHARDT LAW FIRM
2600 Grand Avenue
Suite 450
Des Moines, IA  50312
Telephone: (515) 244-3100
mweinhardt@weinhardtlaw.com
earcher@weinhardtlaw.com

**COUNSEL FOR DEFENDANTS DOLLAR EMPIRE LLC, WELLMAX TRADING LTD., AND MICHAEL WU**

16