# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ASI, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>AQUAWOOD, LLC; BANZAI INTERNATIONAL LTD.; CHAN MING YIU a/k/a Samson Chan; CHAN SIU LUN a/k/a Alan Chan; DOLLAR EMPIRE LLC; BRIAN DUBINSKY; JUN TAI CO LTD.; JOHN ROBERT LEES, in his official capacity as Liquidator of and successor to Manley Toys Ltd.; LIU YI MAN a/k/a LISA LIU; PETER MAGALHAES; MANLEY TOY DIRECT, LLC a/k/a Worldwide Toy Direct; MANLEY TOYS LIMITED; MGS INTERNATIONAL, LLC; MAT NG, in his official capacity as Liquidator of and successor to Manley Toys Ltd.; PARK LANE SOLUTIONS LTD; RICHARD TOTH; TOY NETWORK, LLC; TOY QUEST LTD.; WELLMAX TRADING LTD.; WINNING INDUSTRIAL LTD.; and MICHAEL WU,<br><br>          Defendants. | Case No. 19-cv-0763 (JRT/HB)<br><br><br><br>**ORDER ON THE AQUAWOOD DEFENDANTS' MOTION TO DISQUALIFY COUNSEL** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on a Motion by Defendants Aquawood, LLC;

Brian Dubinsky; and Peter Magalhaes (hereafter "Aquawood Defendants") to Disqualify,

Revoke Pro Hac Vice Status, or Otherwise Limit Counsel's Participation or Impose

Sanctions Against Counsel [ECF No. 255]. The Aquawood Defendants move the Court

to enter an order disqualifying Plaintiff's attorneys Keith Sorge and Stephen Weisbrod, revoking Plaintiff's out-of-state attorney's pro hac vice admission, and/or taking any other action the Court finds appropriate.  For the reasons set forth below, the Court grants the motion in part and denies it in part.

## I.   Background[1]

This motion concerns two of Plaintiff's attorneys: its lead counsel, Stephen Weisbrod, and its local counsel, Keith Sorge.  Weisbrod and Sorge have had extensive involvement in this and related matters.  Sorge has represented Plaintiff in post-judgment proceedings since 2013; Weisbrod has been the lead attorney on this case since 2015 and he leads related matters in New Jersey and Iowa.  (Calland Decl. ¶¶ 3, 4, 8, 12, 14 [ECF No. 266].)  The Aquawood Defendants seek to disqualify Weisbrod and Sorge from serving as advocates in this case on the ground that they are both necessary witnesses as to certain underlying factual matters.  In Weisbrod's case, they argue that a key factual dispute concerns a private conversation Weisbrod had with Defendant Brian Dubinsky.  Because Dubinsky denies making the statements in question, the Aquawood Defendants argue Weisbrod will have to testify if Plaintiff intends to put the alleged statements in evidence.  In Sorge's case, the Aquawood Defendants point out that Sorge serves as Plaintiff's CEO and sole representative, so they argue Sorge is the only plausible witness Plaintiff could call to testify about its judgment enforcement attempts and related

---

[1] The parties in this matter have a long history together that the Court will not revisit in detail.  Instead, the Court incorporates here the background information laid out in prior opinions.  (*See* Oct. 6, 2020 Mem. Op. & Ord. on Defs.' Mots. Dismiss [ECF No. 189].)

decision-making.  Finally, because Sorge is the sponsor for Plaintiff's out-of-state counsel's pro hac vice admissions, the Aquawood Defendants reason that, if Sorge is unable to act as Plaintiff's counsel, the pro hac vice admissions he sponsored should be revoked.

## II.   Legal Standards

"A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary."  *Macheca Transport Co. v. Philadelphia Indemnity Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006).  Given "the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny."  *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996) (cleaned up).

This District has adopted the Minnesota Rules of Professional Conduct.  *See* L.R. 83.6(a); *Harker*, 82 F.3d at 808.  The Aquawood Defendants seek Sorge and Weisbrod's disqualification under Minnesota Rule of Professional Conduct 3.7, which governs the ethical obligations of lawyers as witnesses.  It provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>> (1) the testimony relates to an uncontested issue;
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>> (3) disqualification of the lawyer would work substantial hardship on the client.
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Minn. R. Prof'l Conduct 3.7.

Accordingly, the first question this Court must resolve is whether Weisbrod or Sorge is likely to be a necessary witness at trial. If not, Rule 3.7 is inapplicable. If so, then counsel should be prohibited from "act[ing] as advocate[s] at trial" unless they fall into one of the exceptions described in Rule 3.7(a). But the Aquawood Defendants further seek Weisbrod and Sorge's disqualification from any pretrial activities that might impact the evidence at trial, such as conducting depositions. Thus, if the Court concludes that Weisbrod or Sorge is a necessary witness (and does not fit into one of the Rule's exceptions), it must then determine whether and to what extent either should be barred from engaging in pretrial activities.

## III.    Analysis

### A.    Stephen Weisbrod

#### 1.    Whether Weisbrod is a Necessary Witness

The Aquawood Defendants' challenge of Weisbrod's role in this case relates to a conversation Plaintiff alleges Weisbrod and Defendant Dubinsky had in 2017. (*See* Am. Compl.[2] ¶ 197 [ECF No. 284].) According to Plaintiff, on September 7, 2017, Dubinsky declared to Weisbrod, in a conversation to which no one else was privy, that Plaintiff had no chance of recovering anything of significant value from the defendants because they would always stay at least "one step ahead" of Plaintiff. (*Id.*) Plaintiff alleges that

---

[2] With the consent of all Defendants, Plaintiff moved to amend its Complaint in May 2021. The Court granted Plaintiff's motion on May 13, 2021 [ECF No. 282], so the Amended Complaint [ECF No. 284] is the operative pleading in this matter.

Dubinsky went on to explain that the defendants "are very adept at moving around assets and business relationships so that its companies can continue selling products in the United States without having any assets seized." (*Id.*)  Plaintiff refers to this conversation—which it calls the "one step ahead confession"—numerous times in its pleading (*e.g.*, ¶¶ 367, 442, 789, 931) and elsewhere.  Plaintiff provided further detail on the encounter in a declaration it submitted to the bankruptcy court in New Jersey.  In a declaration filed in that matter, Plaintiff stated that Dubinsky initiated the conversation after his deposition in a prior related case in Los Angeles, when he asked Weisbrod to accompany him to the parking lot while Dubinsky waited for his Uber to arrive.  (Defs.' Ex. C ¶ 1 [ECF No. 258 at 29].)

In response, Dubinsky filed a declaration in which he avers:

5.      I dispute the accuracy of the allegations contained within Mr. Weisbrod's declaration, the accuracy of events as described within Paragraph 266 of the Complaint, and allegations elsewhere in the Complaint that I had a conversation of this sort with Mr. Weisbrod.

6.      More specifically, I deny having made the statements attributed to me.

(Dubinsky Decl. ¶¶ 5–6 [ECF No. 258 at 22].)

An attorney is considered a necessary witness only if the facts to which he or she will testify cannot "be produced in some other effective way."  *Humphrey on Behalf of State v. McLaren*, 402 N.W.2d 535, 541 (Minn. 1987); *see also Merch. & Gould, P.C. v. Premiere Glob. Servs., Inc.*, Case No. 09-cv-03144 (JRT/JSM), 2010 WL 11646623, at *4 (D. Minn. Nov. 15, 2010) ("An attorney is a necessary witness under Rule 3.7(a) where no other person can testify in the attorney's place.").  "If the lawyer's testimony is

merely cumulative, or quite peripheral, or already contained in a document admissible as an exhibit, ordinarily the lawyer is not a necessary witness and need not recuse as trial counsel." *McLaren*, 402 N.W.2d at 541.

Plaintiff does not deny that the conversation between Dubinsky and Weisbrod figures prominently in Plaintiff's allegations.  It is also clear that any testimony Weisbrod could offer on the subject would not be "cumulative" or able to be produced in some other way, since the conversation occurred in private and off-the-record, and Dubinsky, the only other participant in the conversation, disputes Plaintiff's allegations.  Moreover, Plaintiff listed Weisbrod in its initial disclosures as a person likely to have discoverable information.  (Defs.' Ex. A at 10 [ECF No. 258 at 12].)  *See Ahern Rentals, Inc. v. Lexington Ins. Co.*, Case No. 2:09-cv-00679 (LDG/RJJ), 2011 WL 13302279, at *3 (D. Nev. Mar. 3, 2011) (finding that the plaintiff's disclosure of their attorney as a possible witness in their initial disclosures "supports the assertion that his testimony is unique").

Accordingly, the Court concludes Weisbrod is likely to be a necessary witness at trial, should the case reach that point.  Of course, it is still difficult to say what testimony Plaintiff will require to make its showing, so it is possible that this issue could play a less prominent role in Plaintiff's trial strategy, or that the evidence could be offered by some other means.  But Rule 3.7 does not require the Court have *certainty* as to a party's witness line-up; it requires only that the Court conclude it is *likely* that the attorney will need to serve as a witness.  Here, that showing has been made.

### 2.    Scope of Disqualification

The comments to Rule 3.7 observe that attorneys must not serve as witnesses (and

6

vice versa) because "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client."  Minn. R. Prof'l Conduct 3.7 cmt. 1 (2005).  The commentary goes on to emphasize that the concern underlying the rule is not only the possibility that the trier of fact may be confused or misled, but also that the opposing party "has proper objection where the combination of roles may prejudice that party's rights in the litigation. . . . It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof."  *Id.* cmt. 2.

The rule provides for certain exceptions, however, under which an attorney who is serving as trial counsel may nevertheless serve as a witness at trial: 1) if the testimony relates to an uncontested issue; 2) if the testimony relates to the nature and value of legal services rendered in the case; or 3) if disqualification of the lawyer would work substantial hardship on the client.  Plaintiff argues the first and third exceptions are applicable here.

First, Plaintiff argues the Aquawood Defendants have not sufficiently shown that the conversation between Dubinsky and Weisbrod is contested, such that it is premature to disqualify Weisbrod at this stage.  Plaintiff bases this argument on what they characterize as the vague nature of Dubinsky's refutation, contending that Dubinsky has not provided detail about what he *did* say to Weisbrod, if he did not make the statements Weisbrod attributes to him.  But Dubinsky unequivocally "disputes the accuracy of the allegations . . ., the accuracy of events described . . ., and allegations . . . that [he] had a conversation of this sort with Mr. Weisbrod," and he follows that by clarifying further,

"More specifically, I deny having made the statements attributed to me."  (Dubinsky Decl. ¶¶ 5–6.)  The Court is aware of no precedent that suggests that in order to show there is a contested issue, Dubinsky must not only unequivocally deny making the statements attributed to him (which he has) but must also volunteer his own recollection of the conversation.  Dubinsky's declaration is sufficient to show that the issue is not "uncontested," and that the first exception to Rule 3.7 does not apply.

The other exception relied upon by Plaintiff—whether disqualifying Weisbrod will cause Plaintiff substantial hardship—presents a more complicated issue.  But that issue cannot be addressed without first resolving whether the rule contemplates disqualification only from a role at trial, or from some or all pretrial activities.  The Aquawood Defendants argue that the rule requires an attorney who will be a witness at trial to be disqualified from *all* pretrial matters, while Plaintiff argues the rule on its face states only that an attorney who is a necessary witness may not serve as an "advocate *at* trial."  Minn. R. Prof'l Conduct 3.7(a) (emphasis added).

The Aquawood Defendants base their argument for across-the-board disqualification primarily on a single statement in an unpublished Minnesota Court of Appeals decision.  In *Boldt v. Burns*, the state court characterized Rule 3.7(a) as prohibiting an attorney from "undertaking an engagement where he or she is likely to be a material fact witness at trial."  Case No. A07-1774, 2008 WL 4300068, at *3 (Minn. Ct. App. Sept. 23, 2008).  Because the court's language referred broadly to "an engagement," the Aquawood Defendants reason that Rule 3.7 prohibits Weisbrod from engaging in *any* pretrial activity, or, for that matter, from having taken on this case in the first place.

8

The Court does not draw the same conclusion.  First and foremost, if the drafters of the rule intended such a sweeping result, they could easily have said so, but they did not.  Instead, the rule refers only to the attorney's role as an advocate *at trial*.  Second, to the extent the Aquawood Defendants argue this Court should defer to the *Boldt* court's reading of the rule because, as a state court, it speaks with authority on the state rules of professional conduct, the Court observes that the *Boldt* case was unpublished, and therefore not to be cited as precedent.  Minn. Stat. § 480A.08(3)(b).  Moreover, the sentence upon which the Aquawood Defendants place such reliance cites as its only authority a decision from the District of Minnesota Bankruptcy Court, *In re Southern Kitchens, Inc.*, 216 B.R. 819, 833–34 (Bankr. D. Minn. 1998).  From the Court's review of the order in *Southern Kitchens*, it is evident the court was simply attempting to paraphrase the rule and had not been called upon to consider the scope of the rule's prohibition in depth.  Finally, the Aquawood Defendants do not cite, and the Court is unaware of, any other case in Minnesota—or in any of the other states that have adopted the identical rule—that has interpreted it so broadly.  Therefore, the Court rejects the Aquawood Defendants' position that an attorney who will be a necessary witness at trial must withdraw from the case altogether.

But neither does the Court agree that the prohibition is triggered only when the trial begins.  The Eighth Circuit has observed that although "the rule does not normally disqualify the lawyer from performing pretrial activities," it does require the attorney to refrain from pretrial activities that "include[] obtaining evidence which, if admitted at trial, would reveal the attorney's dual role."  *Droste v. Julien*, 477 F.3d 1030, 1036 (8th

Cir. 2007) (internal quotation removed).[3]  Judges in this District have also found that

Rule 3.7 may require disqualification from specific pretrial activities where confusion to

the trier of fact and/or prejudice to the opposing party would result from the dual roles.

*See, e.g., Merch. & Gould, P.C.*, 2010 WL 11646623, at *5–6  (disqualifying plaintiff's

counsel who was likely to be a necessary witness from appearing as an advocate at trial

and also from taking or defending depositions or arguing pretrial evidentiary motions);

*Northbrook Digital LLC v. Vendio Servs., Inc.*, Case No. 07-cv-2250 (PJS/JJG), 2008

WL 2390740, at *21 (D. Minn. Apr. 4, 2008) (ordering counsel to show cause why he

should not be disqualified from pretrial participation in light of his dual role), *overruled*

*in part by Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 733 (D.

Minn. 2008) (order to show cause overruled as moot when counsel agreed not to

participate as an advocate in any pretrial proceedings or at trial); *General Mills, Inc. v.*

*Kellog [sic] Company*, Case No. 06-cv-3686 (JMR/AJB), 2007 WL 9735202, at *2 (D.

Minn. July 11, 2007) (citing *Droste* but denying the motion to disqualify as premature

because it was not yet clear counsel was likely to be a necessary witness at trial and there

were steps that could be taken to mitigate any concern with regard to his involvement in

pretrial activities).  Courts in other jurisdictions that have adopted the identical model

rule are in accord.  *See, e.g.*, *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1127 (D. Kan.

2004) (interpreting identical Kansas rule and disqualifying counsel from taking or

---

[3] In *Droste* the Eighth Circuit was analyzing a Missouri rule that is identical to
Minnesota's Rule 3.7.  *Compare* Minn. R. Prof'l Conduct 3.7 *with* Mo. R. Prof'l Conduct
4-3.7.

defending any depositions); *Pedersen v. Hartford Ins. Co.*, Case No. 201CV0398 PGC,

2003 WL 23354482, at *1 (D. Utah, Oct. 3, 2003) (interpreting identical Utah rule and

disqualifying counsel from taking or defending depositions or arguing pretrial motions).

Accordingly, the Court must consider whether in the circumstances of this case

Weisbrod's participation as an advocate in pretrial proceedings would implicate the

considerations underlying Rule 3.7. If so, the Court must then assess whether

disqualification would work a substantial hardship on Plaintiff to such an extent that the

exception of Rule 3.7(c) should apply.

In undertaking this assessment, the Court finds the analysis in *Merchant & Gould*

instructive. In that case, a law firm brought suit against two companies that it argued had

violated the Telephone Consumer Protection Act by sending hundreds of unwanted

facsimiles to the firm. 2010 WL 11646623, at *1. The firm was represented by one of its

own attorneys, who had also been the person who initially investigated the numerous

"junk faxes." *Id.* at *1. The attorney testified during a deposition that he was the "most

knowledgeable about the factual basis underlying the plaintiff's claims." *Id.* The court

observed that it would be "prejudicial to defendants to burden them with the impossible

task of discerning when [the attorney] is acting as an advocate and when he is acting as a

witness in more subtle settings, such as taking and defending depositions and arguing

evidentiary motions." *Id.* at *5. The court concluded that it was "practically impossible"

to know how counsel's dual roles as witness and advocate could affect deposition

questioning, and that it was "entirely possible that his questioning could become

testimony." Thus, "[t]he resulting prejudice to the opposing party is invisible, because

only the lawyer knows when he has crossed the line from advocacy to testimony.  The same is true of evidentiary motions." *Id.* at *6.

As a result, counsel in *Merchant & Gould* was disqualified from "taking and defending depositions, arguing pretrial evidentiary motions or appearing at trial in his capacity as an advocate." *Id.*  However, he was permitted "to appear as an advocate at non-evidentiary proceedings (*e.g.*, motions to compel, settlement conferences, pretrial hearings and the like), attend depositions as the client representative, perform out-of-court work on behalf of M&G, sit at counsel table at trial as the Firm's representative, and consult with the attorneys representing M&G going forward." *Id.*

*Merchant & Gould* cited at length *Lowe v. Experian,* a decision interpreting a Kansas rule identical to the Minnesota rule at issue here.  In *Lowe*, the court disqualified the attorney from taking or defending any depositions in the case. 328 F. Supp. 2d at 1129.  The court noted that depositions are "routinely used at trial for impeachment purposes and to present testimony in lieu of live testimony when the witness is unavailable." *Id.* at 1127.  The court stated that an oral deposition "could not easily be read into evidence without revealing [the lawyer's] identity as the attorney taking or defending the deposition," and that videotaped depositions "present an even greater concern" because the dual role "would be even more apparent to the jury . . . regardless of whether [the lawyer] is taking or defending the deposition." *Id.*  Either way, the court concluded, "the potential exists for Defendants to suffer prejudice and for the jury to be confused by [the lawyer's] dual role as advocate and witness." *Id.*

In *General Mills*, on the other hand, the court denied the motion to disqualify

counsel or limit his involvement in pretrial activities.  The suit alleged the defendants had

breached a settlement agreement between the plaintiff and the defendants' predecessor

corporation.  2007 WL 9735202, at *2.  The defendants sought to disqualify plaintiff's

counsel because he had been "highly involved in the negotiation of that agreement."  *Id.*

But the court concluded the motion was premature, noting that in most instances, the

interpretation of a contract is a matter of law for the court, so there was no basis to

conclude parol evidence of any kind, including that offered by the attorney, would be

relevant or admissible.  *Id.* at *2–3.  As to whether the attorney should be precluded from

pretrial activities in the meantime, the court identified certain precautions the parties

could take—such as filming video depositions with the camera trained exclusively on the

deponent or reading deposition transcripts into evidence without mentioning the attorneys

involved—to ensure the jury was not exposed to counsel's dual role.  It therefore

concluded the attorney could participate in "any pre-trial proceedings, including

depositions."  *Id.* at *3.

Here, the Aquawood Defendants argue that permitting Weisbrod to participate in

pretrial proceedings would be prejudicial to them for the same reasons that led to the

ruling in *Merchant & Gould*.  Plaintiff responds that such a limitation would work a

substantial hardship on it, not least because Weisbrod serves as Plaintiff's lead counsel

and has been deeply involved in this and related matters since at least 2015.  Plaintiff

urges that the sheer scope and complexity of this case would make restructuring

Plaintiff's legal team a significant challenge, the need for which could be avoided by a

few precautions similar to those proposed by the court in *General Mills*.

Having considered the specific facts and circumstances of this case in light of the policy reasons underlying Rule 3.7 and the potential for substantial hardship to Plaintiff, the Court concludes it is appropriate to set the following limitations around Weisbrod's participation in this case:

First, for obvious reasons, if Weisbrod is deposed he may not defend his own deposition. *See Merch. & Gould, P.C.*, 2010 WL 11646623, at *5.

Second, he may not participate in the deposition of Brian Dubinsky, because the Court sees no reasonable way to mitigate against the potential confusion of Weisbrod as deposing attorney with Weisbrod as a witness with first-hand knowledge.

Third, for the same reason, he may not argue pretrial motions—including both evidentiary and discovery motions—that pertain to or bear in any way on his own or Dubinsky's deposition or testimony at trial, or other matters that may implicate the purported conversation with Dubinsky, because "'in arguing pre-trial motions, oral advocacy may impermissibly become testimony.'" *Id.* at *6 (quoting *Pederson*, 2003 WL 23354482, at *1).

Fourth, unless at some point prior to trial it is established beyond question that Weisbrod will <u>not</u> be a witness at trial (either live or by deposition), he may not appear at trial in his capacity as an advocate.

However, the Court will not curtail Weisbrod's participation in pretrial activities that do not present the same risk of prejudice or confusion arising out of his dual role. Therefore, except as provided above, he will be free to participate in written discovery, prepare and argue pretrial motions, participate in settlement conferences, case

14

management conferences, and pretrial conferences.  Furthermore, except as provided above, the Court will not preclude him from deposing other witnesses or from defending depositions other than his own, *provided* that (1) he does not incorporate or refer, directly or indirectly, to his conversation with Dubinsky at any time and there is no reason to anticipate that other counsel will do so, and (2) as the court suggested in *General Mills*, the deposition is recorded in such a way that at least one camera remains on the deponent at all times while the deposition is in progress and Weisbrod himself is never shown in the same frame as the deponent, assuring that any excerpts used at trial will show only the witness and not Weisbrod.[4]  Finally, to be clear, even with regard to proceedings (such as trial) from which he is precluded altogether from participating as an advocate, Weisbrod may still attend as a representative of the client and may advise and consult with members of the trial team.

 In imposing the limitations set forth above, the Court has considered the concern

---

[4] It is unrealistic to project in this case, as the court did in *General Mills*, that depositions are unlikely to be used at trial, or that reading excerpts of a deposition rather than playing a videorecording would generally be sufficient.  On the contrary, it is highly likely that video depositions will be used at trial in place of witness testimony in a case like this, where several material witnesses are beyond the reach of the trial court's subpoena power.  In that regard, the Court does not overlook the possibility that even if Weisbrod is off-camera, his recorded voice may be recognizable, but it will defer for another day the question of whether it is <u>so</u> recognizable that it raises a significant concern that the jury would connect Weisbrod the attorney participating in a deposition with Weisbrod the witness on the stand at trial.  If so, additional measures such as careful editing of the recording or reading the relevant portions of the transcript rather than playing the recording may become necessary; to the extent those additional measures are more likely to impose a burden or disadvantage on Plaintiff, that is the risk Plaintiff would run by choosing to have Weisbrod participate in depositions that may yield evidence used at trial.

that they will work a substantial hardship on Plaintiff. But for reasons similar to those cited by Judge Mayeron in *Merchant & Gould*, the Court concludes that these limitations are appropriate. First, other capable and experienced counsel in Weisbrod's firm have and will continue to be involved on Plaintiff's behalf. In addition, as discussed in the following section, while the Court will also substantially limit Plaintiff's local counsel Sorge's role in this case, the law firm with which Sorge is affiliated likewise includes a number of capable and experienced litigators and trial lawyers who could step up to assist, particularly given that this case is in the relatively early stages of discovery. Second, as in *Merchant & Gould*, Plaintiff will not "lose the benefit of [Weisbrod's] knowledge and expertise, as he will be free to consult with the lawyers who will be taking and defending depositions and trying the case and he will be free to attend all depositions and trial." *Merch. & Gould, P.C.*, 2010 WL 11646623, at *6. Furthermore, while the Court has rejected the Aquawood Defendants' implicit contention that Weisbrod, recognizing he was likely to be a witness, should not have undertaken this matter in the first place, "[i]t is relevant to the analysis of hardship that 'one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id.*, quoting Minn. R. Prof'l Conduct 3.7, cmt. 4.[5]   Finally, the Court has crafted a more

---

[5] At the hearing on this motion, Plaintiff argued that limiting an attorney's role in a situation such as this would create an incentive for a sophisticated party who suspects he is about to be sued to make a confession to opposing counsel with the intent of disqualifying that counsel. The Court disagrees. Setting aside whether the would-be manipulator would typically have the requisite level of familiarity with legal procedure and the ethical rules, the risk is tremendous and there is no certain pay-off. He has no assurance that the attorney to whom he confesses cannot easily be replaced on the team and, more importantly, he cannot assume the jury will not believe the attorney when the

limited scope of disqualification for Weisbrod with regard to taking and defending depositions than the outcome reached in cases such as *Merchant & Gould*, *Lowe*, and *Pedersen*, in which counsel were disqualified from taking and defending depositions altogether. In so doing, the Court took into account the relatively narrow, albeit significant, subject matter of Weisbrod's prospective testimony, and the breadth of his history with this case and the related litigation, and concluded that the "balancing . . . between the interests of the client and those of the tribunal and the opposing party" implicit in Rule 3.7(a)(3) justified the more limited scope. *See* Minn. R. Prof'l Conduct 3.7, cmt. 4.

### B.    Keith Sorge

#### 1.    Whether Sorge is a Necessary Witness

The Aquawood Defendants also seek to disqualify Keith Sorge, Plaintiff's local counsel, on the ground that he is a necessary witness. Specifically, Sorge is Plaintiff's CEO, and apparently its only current employee or officer. (Defs.' Ex. A at 10.) Accordingly, the Aquawood Defendants argue that Sorge is the only person who can testify about Plaintiff's "alleged judgment enforcement attempts; its rationale and success in bringing garnishment and other actions; its damages; its participation in Manley's bankruptcy case; when Aviva became aware of the purported judgment evasion scheme;

---

latter takes the stand and testifies to the confession. Furthermore, if the trade-off comes at too dear a price for Plaintiff in this case, nothing stops Weisbrod from deciding and committing that he will not take the stand to testify to the purported confession; Plaintiff would then be in precisely the same position as if Dubinsky had refrained from the suspected attempt to manipulate the make-up of the trial team and had said nothing to Weisbrod at all.

and numerous other items central to Aviva's claims and Defendants' defenses." (Defs.'
Mem. at 2 [ECF No. 257].) Moreover, like Weisbrod, Sorge was identified in Plaintiff's
initial disclosures under Rule 26(a)(1)(A)(i) as an individual likely to have discoverable
information that Plaintiff may use to support its claims or defenses. (Defs.' Ex. A at 10.)

Plaintiff does not disagree that Sorge's knowledge is relevant, but argues it is too
soon to know if his testimony will be required because it is possible that George Koeck
could provide the requisite information. Koeck is the former general counsel, senior vice
president, and corporate secretary of Otter Tail Corporation, the "ultimate parent
company" of Plaintiff. (*See* Calland Decl. Ex. 2 at 40–41 [ECF No. 266-1].) Plaintiff
states that Koeck "oversaw Aviva's legal activities at the time that Aviva obtained and
began attempting to enforce its judgment, as well as at the time that Manley liquidated in
Hong Kong and initiated its chapter 15 case in New Jersey." (Pl.'s Resp. at 17 [ECF No.
265].) Plaintiff also points out that Koeck has previously testified on behalf of Plaintiff at
a 2016 hearing in the bankruptcy action. (Calland Decl. ¶ 15.) But Plaintiff also
acknowledges that there may be "gaps" in Koeck's knowledge because he retired from
Otter Tail at the end of 2017. (*See* Pl.'s Resp. at 7; Defs.' Ex. B(3) [ECF No. 258 at 27].)
Plaintiff suggests, however, that any such gaps could be filled with documentary
evidence.

As above, the question for the Court is whether Sorge has evidence that cannot "be
produced in some other effective way." *McLaren*, 402 N.W.2d at 541. Specifically, the
question here is whether Koeck clearly obviates the need for Sorge's testimony. Based
on the information before it, the Court finds it likely that Sorge's testimony will be

required.  As the company's CEO and sole representative, Sorge is in a unique position with insights into Plaintiff's decision-making, and Koeck, the only plausible alternative witness, cannot speak to events and decisions in the nearly four years since he retired in 2017.  While additional certainty one way or the other may develop over time, the Court disagrees with Plaintiff that the Aquawood Defendants are raising the issue prematurely. Discovery and evidence collection are underway, and Rule 3.7 does not require certainty—it requires only that Sorge is "likely" to be a necessary witness.  The Court concludes he is.

## 2.        Scope of Disqualification

As discussed above, because Sorge is likely to be a necessary witness, he must be disqualified from appearing as an advocate at trial as well as from certain pretrial activities unless one of the Rule's exceptions applies.  Plaintiff does not argue that either of the first two exceptions applies.  However, Plaintiff does contend that disqualifying Sorge would work substantial hardship on Plaintiff.

Plaintiff argues that Sorge, like Weisbrod, has a deep knowledge of the complex history of this dispute that outweighs any prejudice the Aquawood Defendants would face by Sorge having "dual roles."  Plaintiff cites in support of its argument *Turner v. AIG Domestic Claims, Inc.*, in which a district judge reversed a magistrate judge's decision to disqualify the plaintiff's counsel, finding that the disqualification would work a substantial hardship on the plaintiff.  823 F. Supp. 2d 899, 908 (D. Neb. 2011).

In *Turner*, the plaintiff had been a defendant in previous arbitration actions.  She subsequently sued the law firm and the insurance company that had represented her in

those actions but that withdrew "when the policy limits were exhausted," leaving Turner to defend the arbitrations and negotiate a settlement alone. *Id.* at 901–02. Turner's counsel in the suit against her former law firm and insurer had represented the arbitration claimants in the prior proceedings, and two of Turner's now-lawyers had themselves signed a settlement agreement between her and some of the claimants during the arbitrations. *Id.* at 902. The defendant law firm and insurer moved to disqualify Turner's counsel on the ground that they were likely to be necessary witnesses at trial. *Id.* The magistrate judge granted the motion, but the district judge reversed, concluding that the hardship to the plaintiff outweighed the potential prejudice to the defendants because the case was "very complex" and Turner's lawyers had "invested much time and money understanding and investigating this case and the predecessor arbitrations, and it would be hard and very expensive (not to mention wasteful) for a new lawyer to replicate those efforts." *Id.* at 908. Among other considerations, the district judge found that it was too early to tell whether the attorneys were in fact necessary witnesses. *Id.* at 908. The court also observed that Turner "cannot afford to hire a lawyer on an hourly basis," and as a result it was "perhaps an impossibility" for her to find another attorney who would be capable of prosecuting the case *and* willing to handle the matter for a contingency fee. *Id.* In other words, if Turner did not have access to these attorneys, she would probably have no counsel at all.

Although the instant case is undoubtedly also very complex and has required substantial investment from attorneys on both sides, the Court disagrees that the situation here is analogous to the situation in *Turner*. First, the Court has concluded that Sorge is

likely to be a necessary witness—a point on which the *Turner* court was not convinced.

Second, there is nothing to indicate that Plaintiff faces the kind of challenges in finding

attorneys to prosecute this case that Turner faced.  On the contrary, unlike in *Turner*, the

disqualification of Sorge would not leave Plaintiff unrepresented.  As already noted,

Plaintiff has a deep bench of attorneys both at Weisbrod's firm and at Sorge's firm

available to represent it in pretrial proceedings and at the trial itself.  And, except for

filing its initial complaint and the motions for admission of counsel pro hac vice, Sorge

himself has not played an active role before the Court, instead leaving that to outside

counsel.  The Court therefore does not find that it would cause Plaintiff substantial

hardship to have Sorge disqualified under Rule 3.7.

  The Court must turn, therefore, to the scope of Sorge's disqualification.  In that

regard, his situation differs markedly from Weisbrod's.  The scope of Weisbrod's

potential testimony at trial is clearly and narrowly defined: Dubinsky's alleged statements

to him in the parking lot following Dubinsky's deposition in Los Angeles in September

2017.  But the potential scope of Sorge's testimony is broader and much more difficult to

delineate.  As Plaintiff's CEO, Sorge will potentially need to offer evidence on a wide

range of topics relating to Plaintiff's decision-making and history, and relating to all of

the Defendants.  In that respect, Sorge's position is even more analogous than Weisbrod's

to the position of the plaintiff law firm partner who was disqualified in *Merchant &*

*Gould.*  Accordingly, the Court disqualifies Sorge from participating as an advocate at

trial, from taking or defending any depositions, and from arguing any pretrial evidentiary

motions.  However, Sorge would still be permitted to argue discovery motions so long as

they do not implicate his role as a witness, conduct written discovery, and participate in settlement conferences, case management conferences, and pretrial conferences.  In addition, like Weisbrod, with regard to those proceedings in which he is not allowed to participate as an advocate (such as trial), Sorge may nevertheless attend as a representative of the client and may advise and consult with members of the trial team.

### C.   The Pro Hac Vice Status of Plaintiff's Out-of-State Counsel

Because Sorge is a necessary witness and unable, under Rule 3.7 of the Minnesota Rules of Professional Conduct, to represent Plaintiff at trial, the Aquawood Defendants argue he cannot support the pro hac vice admission of Plaintiff's out-of-state counsel. They base their argument on Local Rule 83.5(d)(2), which requires that nonresident attorneys be associated with an active member of the bar of this Court who must, among other things, "participate in the preparation and presentation of the case."  The Aquawood Defendants reason that because Sorge cannot serve as an advocate at trial, he cannot "participate in the . . . presentation of the case."  They therefore ask the Court to revoke Plaintiff's out-of-state attorneys' pro hac vice admissions.[6]

The Aquawood Defendants do not cite, and the Court has not found, commentary or case law interpreting Local Rule 83.5(d)(2) and, specifically, whether the phrase "participate . . . in the presentation of the case" requires local counsel to appear at trial as

---

[6] In their Reply, the Aquawood Defendants clarify that Plaintiff "should be given the option to find replacement local counsel and retain attorneys from WMC or to obtain separate Minnesota counsel."  (Defs.' Reply at 2 [ECF No. 270]; *see also* May 4, 2021 Letter at 3 [ECF No. 276] (stating they "would not be opposed to allowing Aviva a thirty-day window to find replacement counsel.").)

an advocate, let alone whether such an interpretation would require the Court to revoke the pro hac vice admission of out-of-state counsel upon determining that the sponsoring local counsel would not be able to appear as an advocate at trial.  On the contrary, in the Court's experience, it is not uncommon—although it may be less than ideal—for local counsel not to have a speaking role at trial but instead to be involved "behind-the-scenes" in trial preparation and presentation.[7]  Accordingly, the Court declines to adopt the Aquawood Defendants' rigid interpretation of the Rule.  Instead, the Court concludes that under the current circumstances, Sorge can fulfill his obligation to participate in the preparation and presentation of the case as required by Local Rule 83.5(d)(2) by acting within the limits described above.  The Court therefore denies the Aquawood Defendants' motion insofar as it seeks revocation of the pro hac vice admissions of out-of-state counsel.

## III.    Conclusion

The Court finds that both Stephen Weisbrod, Plaintiff's lead counsel, and Keith Sorge, its local counsel, are likely to be necessary fact witnesses in this case.  It further finds pursuant to Rule 3.7 of the Minnesota Rules of Professional Conduct that both

---

[7] To be clear, the Court has the authority to order local counsel to play a more significant role in this or any case, in the pretrial proceedings or at trial, particularly if it appears out-of-state counsel are not fulfilling their obligations under the federal and local rules.  *See, e.g.*, *Mgmt. Registry Inc. v. A.W. Companies, Inc.*, Case No. 017-CV-05009 (JRT/KMM), 2019 WL 5388488, at *8 (D. Minn. Oct. 22, 2019).  Obviously, it would be imperative in such a case that local counsel be qualified to fulfill that more significant role.  But nothing has happened thus far in this case to suggest the need for such measures, and the Court sees no reason to take preemptive steps now on the speculation that such measures might be required in the future.

Weisbrod and Sorge must be disqualified from acting as advocates at trial, and from participating in certain pretrial activities, as described above.  Finally, the Court finds that the disqualification of Sorge as provided herein does not require the revocation of Plaintiff's out-of-state counsel's pro hac vice admissions.

Accordingly, IT IS HEREBY ORDERED that the Aquawood Defendants' Motion to Disqualify, Revoke Pro Hac Vice Status, or Otherwise Limit Counsel's Participation or Impose Sanctions Against Counsel [ECF No. 255] is **GRANTED in part** and **DENIED in part** as described in detail herein.


Dated: June 10, 2021                    *s/ Hildy Bowbeer*
                                        HILDY BOWBEER
                                        United States Magistrate Judge