

**Weisbrod
Matteis
& Copley**

Weisbrod Matteis & Copley PLLC
1200 New Hampshire Avenue, NW
Fourth Floor
Washington, DC 20036

202 499 7900

www.wmclaw.com

Shelli L. Calland
Direct Dial: 202-793-2900
scalland@wmclaw.com

August 2, 2021

**By ECF**

Hon. Hildy Bowbeer
Magistrate Judge
U.S. District Court for the District of Minnesota
bowbeer_chambers@mnd.uscourts.gov

Re:     *ASI, Inc. v. Aquawood LLC, et al.*, Case No. 0:19-cv-00763-JRT-HB

Dear Judge Bowbeer:

Defendants continue their pattern of attempting to bury key documents and
frustrate legitimate discovery.  This time, the Dubinsky Defendants seek to
obstruct Aviva from obtaining important documents from nonparty insurers and
brokers.  The Dubinsky Defendants have no standing to challenge the subpoenas,
an issue the Dubinsky Defendants have lost before.  And even if the Dubinsky
Defendants did have standing, the insurance documents are plainly relevant to
Aviva's allegations of a massive judgment evasion scheme, as evidenced by the
fact that the limited number of insurance documents Aviva already has obtained
contain vital information that Aviva incorporated into its amended complaint.

I.      **Defendants Lack Standing to Challenge Aviva's Nonparty Subpoenas.**

The Dubinsky Defendants cannot block a nonparty's production of documents on
the basis of alleged overbreadth or irrelevance.  Only the nonparty itself may raise
such objections.  Here, the subpoenaed nonparties are sophisticated insurance
entities who are well-equipped to assert their own rights.  While parties sometimes
may challenge subpoenas to protect their *own* personal rights or privileges, the
Dubinsky Defendants' vague and contrived concerns are not sufficient to justify
their attempted interference with the subpoenas, especially when Aviva has agreed
to take steps to address those concerns.

"When a subpoena is directed to a nonparty, any motion to quash or modify the
subpoena generally must be brought by the nonparty."  *Gregerson v. Vilana Fin.,
Inc.*, 2006 WL 8443418, at *2 (D. Minn. Dec. 6, 2006) (internal quotation marks
and citation omitted).  A motion to quash "may only be made by the party to

Hon. Hildy Bowbeer
August 2, 2021
Page 2

whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Boaz v. FE Express, LLC*, 2016 WL 2733121, at *1 (E.D. Mo. May 11, 2016)) (citation and quotation marks omitted).[1]

Indeed, one of the main cases on which the Dubinsky Defendants rely explicitly recognizes that "[m]any other courts have held that a party lacks standing to prevent disclosure of information by a non-party in response to a third-party subpoena, either through a motion to quash or a motion for a protective order, unless the challenging party has some personal right or privilege as to the information being sought through the subpoena." *Mallak v. Aitkin Cty.*, 2016 WL 9088760, at *7 (D. Minn. Dec. 22, 2016).

The Dubinsky Defendants are specifically barred from raising relevance objections. Parties have "no standing to seek to quash a subpoena issued to a nonparty on the basis that the documents are irrelevant." *Rigney Fin. Servs. LLC v. Isbell*, 2018 WL 6787353, at *1 (E.D. Ark. Nov. 2, 2018); *see also Uppal v. Rosalind Franklin Univ.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) ("generally, absent an independent interest requiring protection … a party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden") (citing cases); *Wells Fargo & Co. v. ABD Ins.*, 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012) ("A party's objection that a subpoena to a non-party seeks irrelevant information or would impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected.") (citing cases).

The Dubinsky Defendants have litigated and lost this standing issue before. The District of New Jersey resoundingly denied Aquawood's prior attempt to quash Aviva's subpoena to retailer Jet.com in 2017. *See* Ex. 1 (Order, ECF 20, *Aquawood, LLC v. Aviva Sports, Inc.*, No. 2:17-cv-1726 (D.N.J.)). That subpoena included 36 requests seeking a broad range of financial, commercial, and litigation documents. The court ruled that Aquawood lacked standing to object to the subpoena because Aquawood had no privacy right in the kinds of materials sought

---

[1] *See also Knapp v. Novartis Consumer Health, Inc.*, 2014 WL 7082089, at *2 (D. Neb. Dec. 12, 2014) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter.") (internal quotation marks and citation omitted); *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 2007 WL 1544572, at *3 (D. Minn. May 23, 2007) (same).

Hon. Hildy Bowbeer
August 2, 2021
Page 3

by the subpoena, which were not confidential or proprietary, and faced no risk of prejudice from disclosure of the discovery sought. *See id.*

The Dubinsky Defendants again have failed to articulate or demonstrate any real privacy or privilege concerns.[2]  While the Dubinsky Defendants note that Aviva's subpoenas hypothetically would encompass personal health information, they provide no evidence that the subpoenas actually would elicit such information. There is no indication, for example, that the subpoenaed entities actually issued health insurance, homeowners or renters insurance, or life insurance to Dubinsky or Magalhaes.[3]  The Dubinsky Defendants similarly have not shown that they actually provided any privileged work product to the subpoenaed entities.

Moreover, Aviva has agreed to instruct the subpoena recipients that (1) Aviva is not seeking personal health information, which the subpoena recipients should withhold or redact as appropriate and (2) the subpoena recipients may withhold any allegedly privileged documents responsive to the subpoenas, provided that such documents are logged.[4]  Those instructions, in combination with the robust protective order already in place, would more than sufficiently protect whatever legitimate privacy or privilege interests the Dubinsky Defendants may have.

## II.    The Insurance Documents Aviva Seeks Are Relevant.

Even if the Dubinsky Defendants did have standing to challenge the subpoenas, the insurance documents the subpoenas seek are plainly relevant to Aviva's RICO and other claims.  Aviva has alleged that Defendants engaged in a complex international scheme to evade judgments obtained by Aviva and others.  That scheme involved multilayered corporate shell games and asset shuffling to ensure that—as Dubinsky put it—Defendants would stay "one step ahead" of their creditors.  Aviva's amended complaint has added numerous alter ego and fraudulent transfer claims to the mix.

---

[2] A party seeking to quash a subpoena "bears a particularly heavy burden." *DatCard Sys., Inc. v. PacsGear, Inc.*, 2011 WL 2491515, at *2 (D. Minn. Apr. 25, 2011).  A party seeking a protective order must show good cause using specific facts.  *Arctic Cat, Inc. v. Sabertooth Motor Grp., LLC*, 2016 WL 4473466, at *2 (D. Minn. Aug. 1, 2016).
[3] The Dubinsky Defendants' failure to substantiate any privacy claim distinguishes this case from *Mallak*, in which the subpoenaed information about when a defendant accessed certain government databases was defined as the defendant's "private data" by Minnesota statutes.  *Mallak*, 2016 WL 9088760, at *8.
[4] The Dubinsky Defendants did not respond substantively to Aviva's proposal.

Hon. Hildy Bowbeer
August 2, 2021
Page 4

Insurance documents, including policies, applications, certificates of insurance, and related communications, are relevant to Aviva's allegations in many ways.

Even the health and life insurance documents that supposedly motivate the Dubinsky Defendants' concerns are relevant. To the extent that individual Defendants' personal health and life policies were being paid for or procured through the entity Defendants, such facts would be highly relevant to Aviva's conspiracy and alter ego claims because they would tend to show that the entities were being used for the personal benefit of the individuals.

The relevance of insurance documents is not merely theoretical. Insurance documents Aviva already has obtained[5] have been a treasure trove of valuable information and are frequently referenced in Aviva's complaint:

- Insurance documents show the close and overlapping relationships among Defendants, many of which are insured under the same policies.
- Insurance documents reveal that the purported divisions among Defendants and their principals and affiliates are merely illusory. Such documents show, for example, that Defendants regularly use the same contact information (especially Aquawood's Los Angeles address) and representatives (especially Dubinsky) for allegedly separate entities.
- Insurance documents likewise expose how Defendants have attempted to hide their shared locations and personnel. For example, Banzai International changed its address on certain insurance documents from Aquawood's address to a post office branch near Dubinsky's home.
- Insurance documents contain trade names under which Defendants do business. For example, Manley Toys Limited ("Manley") stated in an insurance application that "Manley Toy Direct" was one of its trade names. Aviva expects insurance documents likewise will support its allegation that Manley used and exploited "Toy Quest Ltd." as a trade name.
- Insurance documents show the retailers and other companies with which Defendants have done business.
- Specifically, insurance documents show that Defendants have sold products to customers in Minnesota. For example, at least one policy covering various Defendants named Target Corporation and Target.com as additional insureds, listing addresses in Minneapolis.

---

[5] Aviva obtained those insurance documents through subpoenas previously issued to a smaller set of insurance entities and through Defendants' initial disclosure documents, which were very limited.

Hon. Hildy Bowbeer
August 2, 2021
Page 5

- Insurance documents demonstrate how Defendants have moved assets and falsified financial records.  Insurance applications show, for example, how Manley's $50 million in U.S. sales shifted to Toy Quest Ltd. after Aviva obtained its judgment.  Toy Quest Ltd.'s assets later were sold to Banzai International for less than $2 million.

Contrary to the Dubinsky Defendants' suggestion, a document need not expressly reference a conspiracy to evade Aviva's judgment to be relevant.  Rather, documents are discoverable if they are reasonably likely to relate to Aviva's wide-ranging allegations about corporate shell games, asset commingling, and misrepresentations to retailers, courts, and others, which the Court already found were sufficient to state a claim.

The Dubinsky Defendants' insistence that only documents that explicitly identify Manley could be relevant ignores both the substance of Aviva's allegations and the applicable law.  Aviva has alleged that Defendants' efforts to evade Aviva's judgments radiate far beyond Manley itself, as Defendants drained Manley of its assets and documents and passed those assets and documents from company to company to company.

In addition, Aviva may establish elements of its RICO claims, including the existence of a RICO enterprise, conduct of the RICO enterprise, and a pattern of racketeering activity, using evidence that does not necessarily relate to evasion of *Aviva's* judgments, as opposed to the judgments of other judgment creditors, such as the women in Iowa.  It "would be illogical to require a plaintiff to show that all the acts adding up to a 'pattern' injured him" because the acts may be "directed at a variety of victims" and "somewhat distinct and separate in time."  *Marshall & Ilsley Tr. Co. v. Pate*, 819 F.2d 806, 810 (7th Cir. 1987).[6]

Respectfully submitted,

*/s/ Shelli L. Calland*

Shelli L. Calland

---

[6] *See also Deppe v. Tripp*, 863 F.2d 1356, 1366 (7th Cir. 1988) (citation omitted) (a plaintiff need not "suffer an injury from two or more predicate acts, or from *all* of the predicate acts") (citation omitted); *Barkley v. Carter Cty. State Bank*, 920 F. Supp. 1441, 1443 (E.D. Mo. 1996) (RICO liability exists "when a pattern of racketeering acts existed and only one act caused injury") (citing *Deppe*).