## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ASI, INC.,                                    Civil No. 19-763 (JRT/HB)

               Plaintiff,

v.                                            **MEMORANDUM OPINION AND ORDER**
                                              **ON DEFENDANTS' MOTIONS TO DISMISS**

AQUAWOOD, LLC, *et al*.,

               Defendants.

---

Keith M. Sorge, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, PA**, 81 South Nineth Street, Suite 500, Minneapolis, MN 55402; Shelli L. Calland, Stephen A. Weisbrod, and Tamra Ferguson **WEISBROD MATTEIS & COPLEY PLLC**, 1200 North West New Hampshire Avenue, Suite 600, Washington, DC 20036, for plaintiff;

Joseph H. Lubben, Matthew D. Callanan, and Michael Reck, **BELIN MCCORMICK, PC**, 666 Walnut Street, Suite 2000, Des Moines, IA 50309, for defendants Aquawood, Brian Dubinsky, Peter Magalhaes, and Dollar Empire LLC;

Brandon Underwood, and Devan Rittler-Patton, **FREDRIKSON & BYRON**, 111 East Grand Avenue, Suite 301, Des Moines, IA 50309; Joseph T Dixon, III, **FREDRIKSON & BYRON**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for defendants Benzai International Ltd., Chan Ming Yiu, Liu Yi Man, Chan Siu Lun, Park Lane Solutions Ltd., and Toy Quest Ltd.;

David W. Asp, Kate M. Baxter-Kauf, and Robert D. Hahn, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for defendants MGS International, LLC, and Richard Toth;

Douglas G. Leney and Stephen Michael Packman, **ARCHER & GREINER, PC**, Three Logan Square, 1717 Arch Street, Suite 3500, Philadelphia, PA 19103; George E. Warner, Jr. **WARNER LAW LLC**, 1515 Canadian Pacific Plaza, 120

South Sixth Street, Minneapolis, MN 55402, for defendants John Robert Lees and Mat Ng.

ASI, Inc., formally known as Aviva Sports, Inc., ("Aviva") brings this action seeking to collect on an $8.5 million underlying judgment against Manley Toys, Ltd ("Manley"). Aviva alleges that several defendants, working as a RICO enterprise, engaged in a series of fraudulent transfers in order to evade paying the judgment Manley owed to Aviva.[1] Additionally, Aviva asserts that an overlapping group of defendants are alter egos of one another. Five separate groups of defendants filed five separate Motions to Dismiss for failure to state a claim under Rule 12(b)(6) and for lack of personal jurisdiction under Rule 12(b)(2).

The Court will grant the 12(b)(6) motions in part and deny them in part. First, the Court will grant the motions and dismiss without prejudice the Fraudulent Transfer Claims against Aquawood, LLC ("Aquawood"), Wellmax Trading Ltd. ("Wellmax"), Manley Toy Direct ("MTD"), Toy Network, LLC ("Toy Network"), and MGS International, LLC ("MGS"), Richard Toth, Robert Lees, and Mat Ng. Second, the Court will grant the motions and dismiss without prejudice the alter ego claims alleging Toy Quest Ltd. ("Toy Quest"), Banzai International ("Banzai"), and Park Lane Solutions ("Park Lane"), MTD, Toy Network, MGS, Aquawood, and Manley are alter egos of one another. Third, the Court will dismiss the Aiding and Abetting Fraudulent Transfer Claims because such claims are

---

[1] Manley itself has been liquidated and is not a defendant here. (Am. Compl. ¶ 23, May 17, 2021, Docket No. 379.)

not cognizable under Minnesota law.  Lastly, the Court will dismiss the claims against Robert Lees, and Mat Ng because the Court lacks personal jurisdiction over them.  The motions will be denied as to all remaining claims.

## BACKGROUND

### I.    THE PARTIES

Aviva is a Minnesota corporation with its principal place of business in Minnesota. (Am. Compl. ¶ 23, May 17, 2021, Docket No. 284.)

The Principals consist of four natural persons: defendant Chan Ming Yiu, also known as Samson Chan ("Samson Chan"), defendant Liu Yi Man, also known as Lisa Liu ("Liu"), defendant Brian Dubinsky ("Dubinsky"), and defendant Chan Siu Lun, also known as Alan Chan ("Alan Chan").  (*Id.* ¶¶ 24-28.)  The Chans and Liu are residents of Hong Kong and Dubinsky is a resident of California.  (*Id.*)

The Executives consist of two natural persons: Richard Toth and Michael Wu.  (*Id.* ¶¶ 29-31.)  Toth is a resident of Iowa and Wu is a resident of California.  (*Id.*)

The Liquidators consist of two natural persons: Robert Lees and Mat Ng.  (*Id.* ¶¶ 32–34.)  They are both residents of Hong Kong and are sued in their official capacity as liquidators of and successors to Manley.  (*Id.*)

The final natural person named as a defendant is Peter Magalhaes ("Magalhaes"), who is a resident of California, and is not referred to as an Executive or Principal in the Complaint.  (*Id.* ¶ 47.)

3

The remaining defendants are United States or Hong Kong corporations. Manley was a Hong Kong corporation. (*Id.* ¶ 35.) Toy Quest, Banzai, and Park Lane are Hong Kong corporations with their principal places of business in Hong Kong. (*Id.* ¶¶ 36–38.) Toy Quest, Banzai, and Park Lane are collectively referred to as the "Hong Kong Entities." (*Id.* ¶ 39.)

MTD, Toy Network, and MGS are Iowa corporations with their principal places of business in Iowa. (*Id.* ¶ 40–42.) MTD, Toy Network, and MGS are collectively referred to as the "Iowa Entities." (*Id.* ¶ 43.)

Finally, Aquawood is a California limited liability corporation with its principal place of business in California. (*Id.* ¶ 44.) Dollar Empire LLC ("Dollar Empire") is a California corporation with its principal place of business in California. (*Id.* ¶ 45.)

The Principals, the Executives, the Hong Kong Entities, the Iowa Entities, Aquawood, Dollar Empire, Wellmax, Magalhaes, Manley, and the Liquidators are collectively referred to as the "Fraudulent Transfer Defendants" because Count VII alleges they engaged in fraudulent transfers. (*Id.* ¶¶ 54, 957–87.)

The Principals, the Hong Kong Entities, the Iowa Entities, Aquawood, Dollar Empire, Manley, and the Liquidators are collectively referred to as the "Alter Ego Defendants" because Count VI alleges they are alter egos of one another. (*Id.* ¶¶ 53, 924–56.)

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Court summarizes the background as alleged by Aviva and supported by the record below.  Additional alleged facts will be discussed as necessary in the specific sections analyzing the arguments.

### A.  The Minnesota Judgment

Defendants are an allegedly interconnected group of individuals and corporations, primarily based in Hong Kong, that sell toys and electronics in the United States.  (Am. Compl. ¶ 6–7.)  Aviva alleges that the companies are run by the Principals who use the corporations interchangeably and shift resources among them to obfuscate legal proceedings.  (*Id*. ¶¶ 56–57, 66, 82.)

On August 21, 2013, Aviva won a judgment of $8,588,931.59 against Manley in an action in the United States District Court for the District of Minnesota.  (*See Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, No. 09-1091 (JNE/TNL), Judgment, Aug. 21, 2013, Docket No. 827.)  Aviva reports that Manley has paid only a small fraction of that award.  (*See Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, No. 09-1091 (JNE/TNL), Order, Mar. 21, 2019, Docket No. 1087.)

### B.  The Bankruptcy and Liquidation Proceedings

In 2016, Manley initiated proceedings in Hong Kong to liquidate its assets (the "Hong Kong Proceeding").  (Am. Compl. ¶¶ 558–59.)  Shortly thereafter, the Liquidators filed a Chapter 15 Petition for Recognition of a Foreign Proceeding in the United States

Bankruptcy Court for the District of New Jersey (the "N.J. Bankruptcy Proceeding").  *In re Manley Toys Ltd.*, No. 16-15374 (Bankr. D.N.J.); (Am. Compl. at ¶ 589–90.).  Pending a decision on the question of recognition of the Hong Kong Proceeding, the New Jersey Bankruptcy Court granted a provisional stay of any litigation against Manley or the Liquidators.  (Decl. James Schoeberl Supp. Mot. Stay, Ex. 5, Sep. 6, 2019, Doc. No. 74.)

In February 2018, the Bankruptcy Court recognized the Hong Kong Proceeding as a "foreign main proceeding."[2] *In re Manley Toys Ltd.*, 580 B.R. 632 (Bankr. D.N.J. 2018). That decision was affirmed by the District Court for the District of New Jersey.  *In re Manley Toys Ltd.*, 597 B.R. 578 (D.N.J. 2019).

Aviva, as a creditor, moved for relief from the stay, and the Bankruptcy Court granted the motion in part, permitting Aviva to pursue claims other than alter ego and fraudulent transfer claims against entities and persons related to Manley. ((*See* Schoeberl Decl. Ex. 6); *In re Manley Toys Ltd.*, 2018 WL 1071167, at *1–2 (Bankr. D.N.J. Feb. 23, 2018).  The Bankruptcy Court denied relief from the stay insofar as it pertained to fraudulent transfer and alter ego claims against Manley affiliates because, under Hong Kong law, such claims "belong exclusively to the liquidators." *In re Manley Toys Ltd.*, 2018 WL 1071167, at *1–2.[3]  With limited exceptions, the Bankruptcy Court denied Aviva's

---

[2] Pursuant to 11 U.S.C. §§ 362 and 1520, the provisional stay is converted to an automatic stay upon recognition of the proceeding as a "foreign main proceeding."

[3] AVIVA appealed that ruling to the District Court for the District of New Jersey, which remanded the matter to the Bankruptcy Court to consider additional arguments and evidence on two issues: "whether Aviva may seek injunctive sanctions against Manley for violating the

motion for relief from the stay insofar as it pertained to actions against Manley or the Liquidators.  (Schoeberl Decl. Ex. 6; *see also* March 21, 2019 Order, *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, No. 09-1091 (JNE/TNL), Order, Mar. 21, 2019, Docket No. 1087.)

On June 7, 2019, Aviva filed a new motion for relief from the bankruptcy stay seeking leave (1) to assert alter ego and fraudulent transfer claims against Manley's principals and affiliates, (2) to obtain court orders requiring Manley to preserve evidence, and (3) to pursue injunctive sanctions against Manley for violating post-judgment discovery orders in connection with the Minnesota judgment.  (Schoeberl Decl., Ex. 8, at 34–35.)  The Bankruptcy Court granted Aviva's request for relief from the bankruptcy stay. (Decl. Matthew Callanan Supp. Mot. Dismiss, Ex. A, at ¶ 6, Aug. 09, 2021, Docket No. 364.)

**C.  The Instant Case**

Following the lift of the bankruptcy stay, Aviva filed the Amended Complaint adding three additional counts as well as the Liquidators as defendants.  The additional counts allege that, (1) the Principals, the Hong Kong Entities, Aquawood, the Iowa Entities, the Liquidators, and Manley were alter-egos of one another, (2) the Principals, the Executives, the Hong Kong Entities, Aquawood, Wellmax, the Iowa Entities, Dollar Empire, the Liquidators, and Manley engaged in fraudulent transfers intended to prevent Aviva

---

Minnesota Federal Court's post-judgment discovery orders or to compel compliance with such orders," and "whether the Liquidators are estopped from arguing that this Chapter 15 proceeding or the Hong Kong 'liquidation' prohibit, limit, or otherwise affect such alter ego claims." *In re Manley Toys, Ltd.,* 2019 WL 1987052, at *3 (D.N.J. May 6, 2019).  The Bankruptcy Court affirmed its prior holding.  *In re Manley Toys Ltd.*, 2020 WL 1580244, at *15 (Bankr. D.N.J. Mar. 31, 2020)

from obtaining its judgement from Manley, and (3) to the extent that the Fraudulent Transfer Defendants were not directly involved in the fraudulent transfers, they aided and abetted the fraudulent transfers.  (Am. Compl. at ¶¶ 924–97.)

Defendants filed five separate motions to dismiss.  First, four groups of Defendants filed motions to dismiss the fraudulent transfer claims, aiding and abetting fraudulent transfer claims, and alter ego claims under Rule 12(b)(6).  (Mots. to Dismiss, Aug. 9, 2021, Docket Nos. 343, 350, 356, 361.)  In addition to joining the other defendants' motions, the Liquidators filed a Rule 12(b)(2) motion to dismiss.  (Mot. to Dismiss, Aug. 10, 2021, Docket No. 371.)[4]

## DISCUSSION

### I.  STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to

---

[4] The Liquidators initially filed a 12(b)(2) motion to dismiss on August 9, 2021 but subsequently amended their motion.  (Mot. to Dismiss, Aug. 9, 2021, Docket No. 342.)

the plaintiff, drawing all inferences in plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Documents embraced by the pleadings include those "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003).

Claims that sound in fraud are subject to Rule 9(b)'s heightened pleading standard. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). Claims subject to Rule 9(b) require pleading with particularity, "enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id.* To meet this particularity requirement, the "plaintiff must specifically allege the circumstances constituting fraud . . . including such matters as the

time, place and contents of false representations[.]" *Id.* (cleaned up).  In other words, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015).

## II.  FRAUDULENT TRANSFER CLAIMS

### A.  Relevant Factual Background

The Amended Complaint is lengthy, convoluted, and confusing.  In no particular order, Aviva alleges several waves of fraudulent transfers involving many different groupings of defendants.  These fraudulent transfers were allegedly intended to block Aviva and other claimants from recovering judgments from Manley.  Aviva claims that the Principals caused Manley to fraudulently transfer its employees, documents, intellectual property, product inventory, good will, and accounts to other defendants.  (Am. Compl. ¶¶ 12, 77–82.)  These transactions were not singular but carried out by several parties and in several waves.  (*See e.g.*, *id.* ¶ 377–80.)

First, beginning in 2013, the Principals reduced the use of Manley's name in sales and replaced it with Toy Quest, thereby transferring Manley's business presence to Toy Quest.  (*Id.* ¶¶ 384–87.)  The Principals later created a new entity, Park Lane, and moved

10

nearly all of Manley's employees to identical positions there. (*Id.* ¶¶ 390–91.) Toy Quest and Park Lane assumed many of Manley's accounts and documents, draining Manley of its assets without providing any consideration. (*Id.* ¶¶ 389, 392, 396–97.) That practice apparently continued for several years. (*Id.* ¶ 396.) All along the Principals, the Hong Kong Entitles, Magalhaes, Toy Quest, and Aquawood sent invoices to Manley customers demanding that payment be made to Toy Quest instead of Manley. (*Id.* ¶¶ 474, 638.) Moreover, "[a]ll of the Defendants repeatedly lied to retailers" about which company sold products to them, leading retailers, creditors and Manley's Liquidators to believe that millions of dollars actually owing to Manley were instead due to Toy Quest. (*Id.* ¶ 457–59.) In a second wave of fraudulent transfers, Toy Quest's assets were sold to Benzai at a mere fraction of their worth. (*Id.* ¶¶ 399–400.)[5]

Defendants' unscrupulous actions have not gone unnoticed. Aviva cites to several district court opinions from this District and from the Southern District of Iowa criticizing the Defendants for dishonest actions and disruption of the litigation progress. (*See e.g.*, *id.* ¶¶ 329–41.)

### B. Statute of Limitations

---

[5] The Amended Complaint also contains pages of facts describing how the Principals caused one of their corporations to shut down one day and open the next as defendant Aquawood to avoid a judgment in California, and how the Principals and Toft transferred defendant MTD's assets to Toy Network and then MGS to avoid judgments in Iowa. Those actions do not pertain to fraudulent transfers that harmed Aviva because it was not a creditor in those situations.

The Defendants request that the Court dismiss Aviva's fraudulent transfer claims as time barred. The parties dispute whether Minnesota or Hong Kong's statute of limitations should apply to the fraudulent transfer claim. However, this issue cannot be resolved on the face of the Amended Complaint. As such, the Court will not rule on the statute of limitations issue at this stage.

Generally, statute of limitations defense must be raised affirmatively in an answer, rather than by a rule 12(b)(6) motion to dismiss. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004); *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011). Nonetheless, a court can dismiss a claim where the complaint on its face establishes a statute-of-limitations defense. *Joyce*, 635 F.3d at 367. The determination of when a fraudulent transfer was discovered, and thereby whether the limitations period has run, is a fact intensive decision to be made by a jury unless "the evidence leaves no room for reasonable minds to differ on the issue[.]" *Ahlgren v. Muller,* 2021 WL 3620403, at *5 (D. Minn. Aug. 16, 2021) (citing, *Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 684–85 (Minn Ct. App. 2010)).

Minnesota applies a six-year statute of limitations for claims of 'actual fraud' fraudulent transfers, as opposed to constructive fraud. *Finn v. Alliance Bank*, 860 N.W.2d 638, 657–58 (Minn. 2015). Hong Kong, on the other hand, has a one-year statute of limitations. Transfer of Businesses (Protection of Creditor) Ordinance., (2019) Cap. 49, § 9 (H.K.), available at www.elegislation.gov.hk/hk/cap49. Minnesota follows "the almost

universal rule that matters of procedure [are] governed by the law of the forum state." *Davis v. Furlong,* 328 N.W.2d 150, 153 (Minn. 1983).  Minnesota courts, and federal courts interpreting Minnesota law, have routinely found that statutes of limitations are procedural so far as choice of law is concerned.  *Fleeger v. Wyeth*, 771 N.W.2d 524, 528 (Minn. 2009); *Grewe v. S.W. Co.*, 2005 WL 1593048, at *3 (D. Minn. July 5, 2005).

The Minnesota Court of Appeals has recognized, however, an exception to the general rule.  Where a statute of limitations applies to a statutorily created right, as opposed to a common law right, the statutes of limitations are considered substantive because it is a condition of the right itself rather a limitation on the remedy.  *Christian v. Birch*, 763 N.W.2d 50, 58 (Minn. Ct. App. 2009); *Fredin v. Sharp*, 176 F.R.D. 304, 308–09 (D. Minn. 1997) (stating that a statutory "statute of limitations does not merely bar the remedy for the violation of a right, but limits or conditions the right itself.").

The Minnesota Supreme Court has stated that, "fraudulent-transfer claims based on an actual intent to hinder, delay, or defraud creditors existed at common law as early as 1868 . . . the fact that the Legislature has codified fraudulent-transfer liability does not change the underlying "gist and essence" of fraudulent-transfer law."  *Finn*, 860 N.W. at 657–58.  As such, the fraudulent transfer claims here are not statutorily created and the limitations period is procedural.  Thus, the statute of limitations of the forum state likely applies.

13

Defendants argue that the procedural nature of the Minnesota statute of limitations is irrelevant here because the fraudulent transfer claims are governed by the Minnesota Uniform Voidable Transaction Act ("MUVTA"). MUVTA requires courts to apply the substantive law "of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred." Minn. Stat. § 513.485(b). The Hong Kong defendants assert that the one-year Hong Kong statute of limitations is substantive because it is statutorily created rather than a common law right.

In support of this assertion, the Hong Kong defendants cite a case from a Hong Kong court, however, this case undermines their argument. The Hong Kong court stated that the Hong Kong limitations period "is no more than a procedural time-bar, which serves to bar the remedy whilst leaving the claim extant, and does **not** serve to **extinguish** the transferee's liability *per se* . . ." *OTC International AG v. Perfect Recovery Ltd.*, [2009] 3 HKLRD 13, ¶ 58 (C.F.I.).

Nonetheless, regardless of which statute applies, reasonable minds could differ as to when Aviva should have discovered the fraudulent transfers because the defendants' convoluted scheme was intended to disguise their moves. Moreover, the Amended Complaint alleges that the transfer and distribution of Manley's assets could be ongoing even now, and so would not be time barred under either statute of limitations. As such, the Court will not dismiss the fraudulent transfer claim as time barred.

**C. Sufficient Pleading**

14

Fraudulent transfer claims brought under Minnesota state law must comport with Rule 9(b)'s particularity requirements. *SEC v. Brown*, 643 F. Supp. 2d 1077, 1080 (D. Minn. 2009); *see Russo v. NCS Pearson, Inc.,* 462 F. Supp. 2d 981, 1003 (D. Minn. 2006) ("In cases brought in federal court, Rule 9(b) applies to both common law and statutory fraud claims made under Minnesota law where the gravamen of the complaint is fraud.").

MUVTA provides, in part: "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]" Minn. Stat. § 513.44; *Bartholomew v. Avalon Cap. Grp, Inc.,* 828 F. Supp.2d 1019, 1027 (D. Minn. 2009). A transfer is defined broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Minn. Stat. § 513.41(16). A fraudulent transfer claim must be made against the first transferee, the person for whose benefit the transfer was made, or an immediate or mediate transferee of the first transferee who did not take in good faith. Minn. Stat. § 513.48. Finally, fraudulent intent may be inferred from the presence of one or, preferably, several factors or "badges of fraud" laid out in statute. *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 66 (Minn. 2014).[6]

---

[6] The "badges of fraud" include: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of

Defendants assert that Aviva failed to plead facts pertaining to particular fraudulent transfers, but instead plead fraudulent schemes wherein transfers took place. Defendants' argue that because Aviva does not allege any *specific transfers* that were received by any of the Defendants they have failed to satisfy Rule 9(b)'s pleading requirement.

In certain situations, courts have relaxed the Rule 9(b) pleading standard. *Bastien v. R. Rowland & Co.,* No. 82-950, 1983 WL 1283, at *2 (E.D. Mo. Feb. 25, 1983) ("[When] allegations concern matters which are peculiarly within the defendants' knowledge, the pleading standards are relaxed."); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001) ("[A] court cannot reasonably expect highly specific allegations before allowing at least a brief discovery period . . .  [because the] facts that would have to be alleged are known to the defendants, but the plaintiffs have not yet had a chance to find them out.").  Relaxing the rule, however, does not mean disregarding it entirely.  In *Bastien*, the court stated that the plaintiffs informed defendants of the occasions of fraud, the specific entities involved in the fraud, and the specific material omissions, misstatements, and half-truths made by defendants that caused harm to the plaintiffs.

---

substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8)the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.  Minn. Stat. § 513.44(b).

*Bastian*, 1983 WL 1283, at *3.  Likewise, in *Abels*, the Eighth Circuit found that the plaintiffs indicated items that were mailed to support their mail and wire fraud claims. *Abels*, 259 F.3d at 921.

Here the Fraudulent Transfer Defendants allegedly function as a closely connected group of entities and all of the fraudulent transfers took place between and among them. It follows that the specific facts of the transfers are "known to the defendants, but the plaintiffs have not yet had a chance to find them out." *Id*.

Aviva alleged specific fraudulent transfers bearing several badges of fraud by indicating the parties involved, the general timeframes, and the general assets transferred.  Namely it alleged that Principals directed the use of Manley's name to be reduced, demanded money that was actually owed to Manley to be paid to Toy Quest, and transferred Manley's employees to Park Lane.  It also alleged that Wu directed Dollar Empire to pay more than three million dollars to Toy Quest while knowing it was owed to Manley.  It additionally pled facts indicating transfers bearing the badges of fraud from Toy Quest to Benzai.  Finally, by pleading that the Principals were the real and beneficial owners of Manley and the other corporate Defendants, and that all the fraudulent transfers were made among and between those corporations, Aviva pled that the Principals were the beneficiaries of the fraudulent transfers.  Read liberally, the Amended Complaint adequately alleges fraudulent transfers against those Defendants.

However, the Amended Complaint does not allege with any degree of specificity that Aquawood, Wellmax, the Iowa Entities, Toth, or the Liquidators were involved in making or receiving fraudulent transfers or that they were the beneficiaries of any fraudulent transfers.  As such, Aviva has failed at this time to state a fraudulent transfer claim against those Defendants.

The Court will deny the motions to dismiss the fraudulent transfer claims against the Principals, the Hong Kong Entities, and Dollar Empire.  The Court will grant the motions to dismiss the fraudulent transfer claims against Aquawood, Wellmax, the Iowa Entities, Toth, and the Liquidators.  To the extent that the Court dismisses the fraudulent transfer claims, it does so without prejudice to enable further development of the claims.

### III. AIDING AND ABETTING FRAUDULENT TRANSFER CLAIMS

Aviva alternatively alleges aiding and abetting fraudulent transfer claims against the Fraudulent Transfer Defendants.  The Minnesota Supreme Court has not addressed whether aiding and abetting fraudulent transfer is a cognizable claim.  "When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the same issue before us."  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010).

To date, only one Minnesota court has recognized aiding and abetting fraudulent transfer claims.  *Janssen v. Lommen, Abdo, Cole, King & Stageberg, P.A.*, No. A14-452, 2014 WL 7237121, at *6 (Minn. Ct. App. Dec. 22, 2014).  That holding rested on limited

reasoning. The *Janssen* opinion does not address whether aiding and abetting fraudulent transfer is a cognizable claim, or what element of the law supports an aiding and abetting claim. It merely overturns a trial court's decision to grant a motion to dismiss several claims, one of which was an aiding and abetting fraudulent transfer claim. *Id.* at *7. Moreover, *Jansson* is not binding on this Court. *Badrawi v. Wells Fargo Home Mortg., Inc.*, 718 F.3d 756, 760 (8th Cir. 2013) ("A decision of an intermediate state appellate court is not binding on a federal court that seeks to determine state law . . . . We will only follow the decisions of the state's intermediate courts when they are the best evidence of what the state's law is.").

Interpreting the Minnesota Uniform Fraudulent Transfer Act[7], the Minnesota Supreme Court stated "uniform laws are interpreted to effect their general purpose to make uniform the laws of those states that enact them . . . Accordingly, we give great weight to other states' interpretations of a uniform law." *Citizens State Bank Norwood Young Am.,*, 849 N.W.2d at 61. A significant number of cases from across the country have held that aiding and abetting fraudulent transfer claims are not cognizable under various states' "uniform" fraudulent transfer acts.[8] The consensus among courts is that

---

[7] In 2015, the Minnesota Uniform Fraudulent Transfer Act was amended to the Minnesota Uniform Voidable Transactions Act. *See* Minn. Stat. §§ 513.41-.51.

[8] *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F.Supp.2d 884, 918–19 (D. Ariz. 2007) (holding that "courts have uniformly rejected" a claim that the catch-all provision of the uniform fraudulent transfer act allows for aiding and abetting liability); *Edgewater Growth Cap. Partners, L.P. v. H.I.G. Cap., Inc.*, No. 3601-VCS, 2010 WL 720150, at *3 (Del. Ch. Mar. 3, 2010) (refusing to find aiding and abetting liability because "the text of the [Uniform] Act does not provide for an aiding and abetting claim," "the General Assembly is free to do so itself," and "such an innovation

a fraudulent transfer claim is a claim of equity that cannot support third party liability such as an aiding and abetting claim. *See e.g. Cadle Co.*, 345 P.3d 1052–53 (finding aiding and abetting liability improper due to the equitable nature of relief provided by the uniform act, as creditors find recourse by being "returned to their pre-transfer position[.]").

Moreover, the MUVTA does not create the right to pursue fraudulent transfer claims but instead recognizes the long existing Minnesota common law cause of action. *Finn*, 860 N.W. at 658.  Minnesota courts from well over a century ago recognized that fraudulent transfer claims are based in equity. *See Banning v. Armstrong*, 7 Minn. 40, 44

---

would thereby render [the Uniform Act] non-uniform."); *Magten Asset Mgmt. Corp. v. Paul Hastings Jaofsky & Walker LLP*, No. 04-1256-JJF, 2007 WL 129003, at *2-3 (D. Del. Jan. 12, 2007) (finding non-transferees cannot be liable under Montana law under an aiding and abetting theory in part by comparing the uniform act to bankruptcy provisions); *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272, 1276 (Fla. 2004) ("There simply is no language in FUFTA that suggests the creation of a distinct cause of action for aiding-abetting claims against non-transferees.  Rather, it appears that FUFTA was intended to codify an existing but imprecise system whereby transfers that were intended to defraud creditors could be set aside."); *GATX Corp. v. Addington*, 879 F.Supp.2d 633, 644 (E.D. Ky. 2012) (denying aiding and abetting liability primarily based on its review of other states' laws and the bankruptcy code and holding that to add such a claim "would be writing a remedy into a statute by judicial construction[.]"); *Kruse v. Repp*, No. 4:19-cv-00106, 2020 WL 1317479, at *13-16 (S.D. Iowa Mar. 20, 2020) (rejecting aiding and abetting liability under Iowa law because fraudulent transfer claims are "equitable in nature" and not tort-based damage claims); *F.D.I.C. v. S. Prawer & Co.*, 829 F.Supp. 453, 455–57 (D. Me. 1993) (holding no accessory liability lays for a violation of the Maine Uniform Fraudulent Transfers Act because it is an equitable remedy rather than a tort); *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052–53 (Nev. 2015) (finding aiding and abetting liability improper due to the equitable nature of relief provided by the uniform act, as creditors find recourse by being "returned to their pre-transfer position"); *F.D.I.C. v. Porco*, 552 N.E.2d 158, 159 (N.Y. 1990) (rejecting an argument that the uniform statute "create[d] a creditor's remedy for money damages against parties who . . . were neither transferees of the assets nor beneficiaries of the conveyance."); *Rohm & Haas Co. v. Capuano*, 301 F.Supp.2d 156, 161 (D.R.I. 2004) (finding a mere participant "cannot be sued" under the Rhode Island Uniform Transfer Act).

(1862) (holding that a plaintiff who brings an action "to cancel a fraudulent assignment" is "entitled to relief **in equity**"); *In re Wencl*, 71 B.R. 879, 884 (Bankr. D. Minn. 1987) ("Under Minnesota law, an action to set aside a fraudulent conveyance has been classified as a proceeding in equity virtually since statehood."); *Brill v. W.B. Foshay Co.*, 65 F.2d 420, 423 (8th Cir. 1933) (referring to the court as a "court of equity" after discussing actual and constructive fraud fraudulent transfers.)

The Court is aware of only two cases in this district that discuss fraudulent transfer claims as legal claims that can support aiding and abetting liability for third parties not directly involved in making or benefiting from a fraudulent transfer.  First, in *Zayed v. Buysse* the Court stated that the plaintiff could pursue a "legal claim under the [Minnesota Uniform Fraudulent Transfer Act.]"  No. 11-cv-1042, 2012 WL 12893882, at *35 (D. Minn. Sep. 27, 2012).  But in *Zayad*, there was no reasoning discussed in support of the conclusion.

In *Cedar Rapids Lodge & Suites, LLC v. Seibert*, the Court held that the underlying fraudulent transfer claims could support a conspiracy to commit fraudulent transfer claim.  No. 14-cv-04839, 2018 WL 747408, at *18 (D. Minn. Feb. 7, 2018).  The Court stated it would be "truly anomalous if common-law civil fraud can serve as the underlying tort for a conspiracy claim, but a similar statutory allegation of [actual-fraud fraudulent transfer] cannot."  *Id.*

21

However, the *Cedar Rapids* decision is not helpful to this case for three reasons. First, it is not binding on this Court. Second, the Court did not address the litany of cases interpreting uniform fraudulent transfer statutes across the country or examine the history of fraudulent transfers in this state. And finally, the Court was not dealing with an aiding and abetting claim, but a conspiracy to commit fraudulent transfers between two parties, one of whom fraudulently transferred assets to the other. *Id.* at *15. Thus, *Cedar Rapids* is distinguishable from this case.

The Court interprets Minnesota's fraudulent transfer law consistent with the interpretations of other uniform fraudulent transfer acts throughout the country. This interpretation is in line with the history of fraudulent transfer law in Minnesota. Therefore, the Court finds that aiding and abetting fraudulent transfer claims are not cognizable under MUVTA, and will grant the Defendants' Motions to Dismiss those claims.

## IV. ALTER EGO CLAIMS

Aviva alleges that the Principals disregarded the corporate form of Manley, Aquawood, the Hong Kong Entities, and the Iowa Entities to avoid paying the judgments Manley incurred. Aviva asks that the Court pierce those corporations' corporate veils and treat the Principals as their alter egos, and treat each corporation as the alter ego of the other corporations.[9]

---

[9] Aviva alleges "alter ego claims." However, the Eighth Circuit has stated that piercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right and not as an independent cause of action. *Tamko Roofing Prods. v. Smith Eng'g Co.*, 450

### A. Relevant Factual Background

The Amended Complaint contains pages detailing how Manley shifted its business to Toy Quest and Park Lane at the direction of the Principals. (Am. Compl. ¶¶ 386–97.) Manley received no compensation for the business or assets it transferred. (*Id.* ¶ 397.) Moreover, the Principals directed Manley to transfer its business in order to avoid liability Manley had incurred. (*Id.* ¶ 384). Thereafter, the Principals continued to order the transfer of everything from Manley's assets to its goodwill through a maze of corporations including the Hong Kong entities and the Iowa entities. (*Id.* ¶¶ 398–431.) Often the lines between which corporation was engaging in what business were blurred. (*Id.*)

Throughout the convoluted process all roads led back to the Principals. The Principals oversaw the transfer of Manley's assets from one Hong Kong entity to another. (*Id.* ¶¶ 386, 398, 419.) The Iowa entities took directives from someone named Herman Haas who referred to one of the Principals, Samson Chan, as his boss. (*Id.* ¶¶ 306–07.) Two of the Principals, Samson Chan and Dubinsky, played "key roles" in the management Aquawood. (*Id.* ¶ 333.) And the Principals owned Aquawood. (*Id.* ¶ 435.) Finally, the Amended Complaint alleges that the Principals explicitly stated their use of numerous corporations was meant to ensure that they could "always stay 'one step ahead' of creditors." (*Id.* ¶ 442.)

---

F.3d 822, 826 n.2 (8th Cir. 2006). Nonetheless, the Court will use Aviva's "claim" terminology in its analysis of Aviva's request for veil piercing relief.

**B. Choice of Law**

The parties disagree on which law the Court should apply to the alter ego claims.

Aviva asserts that there is no conflict between the laws of the relevant jurisdictions so the

law of the forum state governs. The Defendants contend that the internal affairs doctrine

applies, and the Court must apply the law of each corporate defendants' incorporation.

The Court finds that there is a genuine conflict of laws here and that the internal affairs

doctrine necessitates that it apply the law of the corporations' jurisdiction of

incorporation.

### 1. False Conflict

Aviva argues that there is no genuine conflict between Minnesota's alter ego law

and the other relevant jurisdictions' alter ego laws. Where the laws of separate

jurisdictions would produce the same result on the particular issue presented, there is a

"false conflict," and courts should avoid choice-of-law questions. *Ronnoco Coffee, LLC v.*

*Westfeldt Bros.*, 939 F.3d 914, 920 (8th Cir. 2019). A brief look into the alter ego

requirements for each of the jurisdictions involved here is required.

- Minnesota:

"Under Minnesota law, deciding whether to allow a corporate veil to be pierced

requires a court to 1) analyze whether the corporation functioned as the mere

instrumentality of the principals a party is attempting to reach by piercing the corporate

veil, and 2) determine whether injustice or fundamental unfairness would occur if the corporate veil were left intact." *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997).

- Iowa:

"A corporate entity is the alter ego of a person if (1) the person influences and governs the entity; (2) a unity of interest and ownership exists such that the corporate entity and the person cannot be separated; and (3) giving legal effect to the fictional separation between the corporate entity and the person would sanction a fraud or promote injustice." *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) (quotation omitted).

- California:

The California Supreme Court has held that that an alter ego claim has "two general requirements: (1) that there be such unity of interest **and ownership** that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Management Co.*, 702 P.2d 601, 606 (Cal. 1985) (emphasis added); *Stark v. Coker*, 129 P.2d 390, 394 (Cal. 1942) ("The two requirements [for piercing the corporate veil] are that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and that adherence to the fiction of separate existence would, under the circumstances, promote fraud or injustice").

-   Hong Kong:

The general requirements for lifting the corporate veil are (1) the corporate form is being used for the purposes of fraud or as a device to evade a contractual or other legal obligation, and (2) the defendant controls the corporation.  *Wong Chau Wan v. Inc. Owners of Nos. 11 12 Canal Rd. W.*, [2015] H.K.D.C. 412, ¶¶ 26–27.[10]   Courts are not permitted to lift the corporate veil in the absence of those requirements even if justice so requires.  *Id.*

In sum, the four jurisdictions' requirements do not align.   In Minnesota, the defendant must control the alter ego corporation and failure to pierce the corporate veil must result in injustice or fundamental unfairness.  In Iowa and California, the defendant must control **and own** the alter ego corporation and failure to pierce the corporate veil must result in injustice or fraud.  And in Hong Kong the defendant must control the alter ego corporation and use it for the purpose of fraud.  As such, there is no false conflict here.

### 2. Internal Affairs Doctrine

"The internal affairs doctrine is a conflict of law principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—

---

[10] Available at https://www.hklii.hk/cgi-bin/sinodisp/eng/hk/cases/hkdc/2015/412.html?stem=&synonyms=&query=title(WONG%20C HAU%20WAN%20and%20.%20INCORPORATED%20OWNERS%20OF%20NOS%2011%2012%20C ANAL%20ROAD%20WEST,%20HONG%20KONG)%20OR%20ncotherjcitationtitles(WONG%20CH AU%20WAN%20and%20.%20INCORPORATED%20OWNERS%20OF%20NOS%2011%2012%20CA NAL%20ROAD%20WEST,%20HONG%20KONG).

matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of Laws § 302, cmt. b (1971)).

The Eighth Circuit has not addressed whether the internal affairs doctrine applies to veil piercing claims. However, determining whether an entity is an alter ego entails a detailed analysis of a corporation's internal affairs.[11] Courts across many jurisdictions—including in the District of Minnesota—have consistently found that alter ego claims are governed by the internal affairs doctrine. *Matson Logistics, LLC v. Smiens*, No. 12-400, 2012 WL 2005607, at *6 (D. Minn. June 5, 2012) (collecting cases and stating that there is "near unanimity of courts in applying the internal affairs doctrine to veil piercing claims").[12] It follows that the internal affairs doctrine should apply to the alter ego claims

---

[11] In Minnesota, for example, courts examine "insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely façade for individual dealings." *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979).

[12] One district court in the Eighth Circuit held that the internal affairs doctrine does not apply where foreign corporations are involved. *See Schwan v. CNH Am. LLC*, No. 04-3384, 2006 WL 1215395, at *17 (D. Neb. May 4, 2006) (reasoning that the forum state's interest in applying its law to citizens injured by foreign corporations outweighed the interests of the corporation's jurisdiction of incorporation) (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 621 (1983) (emphasis in original)).

However, *Schwan* relied on *First National Bank* which is inapposite here. *First National Bank* determined that there was a genuine overriding interest in protecting domestic citizens from categorical violations of their rights by the actions of foreign governments. 462 U.S. at 621–22 ("[t]o give conclusive effect to the law of the chartering state in determining whether the

here, and the Court should apply the law of the defendant corporations' jurisdictions of

incorporation.

### C. Merits

The Amended Complaint alleges a complex web of alter egos asserting that all the

Alter Ego Defendants are functionally a single entity.  (Am. Compl. ¶ 925.)  Aviva claims

the following alter ego relationships:

1. Manley is an alter ego of the Principals;
2. The Hong Kong Entities, Aquawood, and the Iowa Entities are alter egos of the Principals;
3. Manley is an alter ego of the Hong Kong Entities, Aquawood, and the Iowa Entities; and
4. The Hong Kong Entities, Aquawood, and the Iowa Entities are alter egos of one another.

(*Id.*)

In all relevant jurisdictions the plaintiffs must plead facts showing that the alter

ego entity is controlled by its alter ego principal for a wrongful or fraudulent purpose.

*See, e.g.*, *Victoria Elevator Co. of Mpls. v. Meriden Grain Co.*, 283 N.W.2d 509, 512–13

(Minn. 1979) (holding that a corporation was the alter ego of its owner who controlled

the corporation's finances for his own purposes); *Benson v. Richardson*, 537 N.W.2d 748,

761 (Iowa 1995) ("We will set aside the corporate fiction if there is such unity of interest

and ownership that the individuality of the corporation and its owners have ceased and

---

separate juridical status of its instrumentality should be respected would permit the state to violate with impunity the rights of third parties under international law while effectively insulating itself from liability.")  That is not the case here where all the parties involved are private entities.

the facts demonstrate observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice."); *Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 159 Cal. Rptr. 3d 469, 479–80 (Cal. Ct. App. 2013) (holding that a court will pierce the corporate veil where there is "such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal"); *Wong Chau Wan* [2015] H.K.D.C. 412 ¶ 42 ("The lifting of the corporate veil requires . . . circumstances showing that a company has been used as the 'alter ego' by a defendant for the purpose of fraud, or as a device or sham to commit impropriety or wrongdoing[.]").

Aviva alleges that the Principals ordered Manley's business and assets to be transferred among and between the Hong Kong Entities after Aviva acquired the judgment against Manley. Those allegations indicate the Principal's control over Manley and the Hong Kong entities. The constant movement of assets and business between the entities and the explicit statement of the Principals that they did so to stay one step ahead of creditors shows that the corporations were used to for the purpose of perpetuating fraud. Therefore, the Complaint shows control and fraudulent purpose as required by all jurisdictions. Those allegations are sufficient as they pertain to Manley and the Hong Kong entities because they satisfy the requirements of Hong Kong law.

California and Iowa law require ownership in addition to control. *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) ("Ownership is a pre-requisite to alter ego liability, and

not a mere 'factor' or 'guideline.'"); *HOK Sport, Inc.*, 495 F.3d at 935 (finding that a for-profit business was the owner of a nonprofit corporation and thus could be its alter ego). Aviva alleges that the Principals own Aquawood, but does not allege that the Principals owned the Iowa entities. According to the Amended Complaint, the Iowa Entities' corporate form was fragmented and confusing, but they were taking directives from the Principals and their employees understood that they were working for the Principals. (Am. Compl. ¶ 232.) Therefore, construing the Amended Complaint in Aviva's favor as the Court must, the Plaintiffs have pled sufficient facts to indicate that the Iowa Entities are effectively owned by the Principals.

The Amended Complaint does not allege any facts tending to show that any of the corporate defendants controlled any other corporate defendant. At no point does the Amended Complaint spell out instances of corporate defendants ordering or causing another corporate defendant to act in any way. Instead, the Principals directed the actions taken by the corporations. As such the alter ego theories regarding the corporate defendants rest on the fact that all of these entities appeared to work in tandem. That, however, is not a sufficient allegation to maintain an alter ego claim.

Therefore, the Court will deny the motions to dismiss the alter ego claims alleging that that Manley, the Hong Kong Entities, the Iowa Entities and Aquawood are alter egos of the Principals. However, because the Amended Complaint does not contain sufficient facts to support a finding that the Hong Kong Entities, Aquawood, the Iowa Entities, and

30

Manley are alter egos of one another, the Court will grant the motions insofar as it relates to them.  Again, the Court will dismiss the claims without prejudice.


## V.  LIQUIDATORS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  Standard of Review

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).  "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)).  The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647.  For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the non-moving party.  *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F. 3d 588, 592 (8th Cir. 2011).

### B.  Relevant Factual Background

In early 2016, Aviva brought a motion for sanctions against Manley for its failure to pay the judgment it owed to Aviva.  (Am. Compl. ¶ 551.)  A hearing on the motion was initially scheduled for early March 2016.  (*Id*. ¶¶ 580.)  However, the Principals

orchestrated a sham motion to intervene in order to delay the hearing.  (*Id*. ¶¶ 580–584.)
The motion to intervene was denied as "grossly deficient."  (*Id.* ¶ 586.)  Nonetheless, the
motion delayed the sanctions hearing until late March, which gave the Principals time to
"begin Manley's liquidation in Hong Kong and direct Manley's liquidators to file a petition
for chapter 15 recognition and a request for emergency provisional relief to shut down all
U.S. litigation relating to Manley[.]" (*Id*. at ¶¶ 589–590.)

The Principals provided funding for the Liquidators to carry out the chapter 15
proceeding, but concealed Manley's assets and otherwise mislead the Liquidators into
believing Manley conducted little business in the U.S. and had less than $100,000 in assets
in the U.S.  (*Id*. at ¶¶ 595–597.)  The Liquidators filed the bankruptcy petition, triggered a
bankruptcy stay, and blocked Aviva's efforts to pursue legal action against Manley or
access Manley's documents.   (*Id*. at ¶ 599.)   Meanwhile, the Principals withheld
documents from the Liquidators that might have supported fraudulent transaction or
alter ego claims against Manley.  (*Id*. at ¶¶ 601–605.)  Moreover, the Principals under-
funded the Liquidators' actions in Hong Kong where they could have pursued many of
those claims.  (*Id*. at ¶ 600.)

In 2019, the Liquidators informed Aviva that they had agreed to a settlement with
Toy Quest which would have given Manley's creditors approximately one tenth of one
percent of their claims against Manley.  (*Id*. at ¶¶ 607–612.)  The settlement agreement
was negotiated on both sides by lawyers paid by Toy Quest.  (*Id*.)  In 2020, a Hong Kong

Court rejected the settlement.  (*Id*. at ¶ 619.)  Thereafter, the Liquidators determined that they would not be able to obtain an enhanced settlement and subsequently moved to close the Manley liquidation proceeding.  (*Id*. at ¶¶ 621–622.)

### C. Analysis

#### 1. Minimum Contacts

Generally, the Court may exercise personal jurisdiction over a defendant if doing so (1) is consistent with Minnesota's long-arm statute and (2) comports with the Due Process Clause of the Fourteenth Amendment.  *See Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020).  Because Minnesota's long-arm statute extends as far as the Due Process Clause allows, "the Court need only consider whether exercising personal jurisdiction over [a defendant] is consistent with due process."  *Pope*, 588 F. Supp. 2d at 1015.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Court must therefore assess whether "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

33

The Eighth Circuit employs a five-factor personal jurisdiction test, assessing:

> (1)   the nature and quality of the contacts with the forum state;
> (2)   the quantity of the contacts with the forum state;
> (3)   the relationship of the cause of action to the contacts;
> (4)   the interest of the forum state in providing a forum for its residents; and
> (5)   the convenience of the parties.

*See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012) (citation omitted).

"The five-factor test essentially boils down to three: (1) whether the quality and quantity of the defendant's contacts with the forum state establish minimum contacts; (2) whether the litigation arises out of those contacts; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state." *Ahlgren*, 438 F.Supp.3d at 987.

First, Liquidators do not have sufficient contact with Minnesota because Liquidators are residents of Hong Kong and have never engaged in business in Minnesota.

Second, the only nexus between the present action and Minnesota is the Chapter 15 bankruptcy case in New Jersey where Liquidators sought to dispose of Manley's assets. Under § 1510 of the Bankruptcy Code, a foreign representative filing a bankruptcy petition does not subject itself to the jurisdiction of a U.S. Court for any purpose.  11 U.S.C.

§ 1510.  As such, the second factor weighs against finding personal jurisdiction, and the Court does not have jurisdiction over the Liquidators under the minimum contacts test.

Because the first two factors are not met, this Court does not need to address the third factor and finds that it does not have jurisdiction over the Liquidators under the minimum contacts test.  *Ahlgren*, 438 F.Supp.3d at 987.

Aviva asserts alternate bases of jurisdiction: imputed jurisdiction and the Calder's effects test.[13]  Those theories similarly fail because Manley was not acting on behalf of the Liquidators and because the Liquidators did not intentionally direct their actions at Minnesota.  Because Aviva fails to plead a prima facie showing of jurisdiction over the Liquidators, the Court will dismiss them from the lawsuit.

### 2. Imputed Jurisdiction

Aviva claims that the Court's jurisdiction over Manley is imputed to the Liquidators. "[C]ontacts with the forum state that are made on behalf of the defendant by others may be considered."  *Digi-Tel Holdings v. Proteq Telcoms.*, 89 F.3d 519, 523-24 (8th Cir. 1996).

---

[13] Aviva also claims the Court has jurisdiction under conspiracy jurisdiction.  Aviva's claim for conspiracy jurisdiction requires a showing that (1) a conspiracy existed, (2) the non-resident defendant participated in or joined the conspiracy, and (3) an overt act was taken in furtherance of the conspiracy within the forum's borders.  *Yellow Brick Rd., LLC v. Childs*, 36 F. Supp. 3d 855, 864 (D. Minn. Aug. 6, 2014) (citing *Hunt v. Nevada State Bank*, 172 N.W.2d 292 (Minn. 1969)). Aviva does not plead facts that show the Liquidators were part of the conspiracy, so this theory fails.

Additionally, the Liquidators ask the Court to apply the *Barton* doctrine.  Under *Barton*, a plaintiff cannot sue a court appointed receiver without first obtaining the leave of the appointing Court.  *Barton v. Barbour*, 104 U.S. 126, 128–31 (1881).  However, no cases apply the *Barton* doctrine to foreign courts, so this Court will not do so.  *See In re Irish Bank Resol. Corp. Ltd.*, No. 18-cv-1797, 2019 WL 4740249, at *4 (D. Del. Sept. 27, 2019) (finding that applying the *Barton* doctrine to foreign courts "would be a very expansive application of *Barton*").

"[W]hen commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a 'primary participant' in the enterprise and has acted purposefully in directing those activities." *Id.* (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 479 n.22 (1980)).

While it is undisputed that the Court has jurisdiction over Manley, Aviva's assertion of imputed jurisdiction fails because Manley was not acting "on behalf of" the Liquidators. *Id.* Aviva fails to produce facts sufficient to support the inference that Manley's activities were "directed by or primarily for the benefit of" the Liquidators. *Id.* The Liquidators served an entirely different function—to liquidate Manley's business and distribute its assets to creditors. Thus, Manley's contacts cannot be imputed to Liquidators.[14]

### 3. Calder Effects Test

Finally, Aviva relies on the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783, (1984). In *Calder*, the Supreme Court upheld a California court's exercise of personal jurisdiction over the Florida-based "editor and reporter of the *National Enquirer*, a Florida-based newspaper with a nationwide circulation." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991). Plaintiff, a California resident, had sued for libel, and the Supreme Court concluded that jurisdiction was appropriate

---

[14] Aviva cites personal liability cases to support their assertion that Liquidators "essentially **are** Manley, as both a practical and legal matter." (Aviva Opp. 12(b)(2) Mot. Dismiss, at 12, Oct. 12, 2021, Docket No. 398) (emphasis in original.); *e.g. Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637-38 (8th Cir. 1975). However, those cases are distinguishable because Manley did not exercise any control or domination over Liquidators, unlike the defendants in the cases Aviva cites.

because the editor and reporter (1) had acted intentionally, (2) knew that a particular plaintiff would be harmed, and (3) "knew that the brunt of injury would be suffered in the state where the plaintiff lived[.]"  *Id.*  The Court found that "under these circumstances, petitioners must reasonably anticipate being haled into court" in California.  *Id.* (quoting *Calder*, 465 U.S. at 790).

The Liquidators fail the first element of the *Calder* effects test because none of the allegations in the Amended Complaint support finding the Liquidators acted intentionally. The Liquidators could not have **intentionally** blocked Aviva from collecting its judgment against Manley without knowing that Manley had the capacity to pay the judgment, and the Liquidators could not have known if Manley had the capacity because the Principals "concealed Manley's assets from the Liquidators."  (Am. Compl. ¶ 595.)  In fact, the Amended Complaint suggest that the Liquidators were the victims of other defendants' conspiracy actions.  The Amended Complaint alleges that the Principals frequently lied to them, withheld information from them, provided false information to them, and withheld money and documents necessary for them to pursue loss-recovery claims.  (*See Id.* ¶¶ 379, 392, 458, 502–506, 552, and 595–605.)  Accordingly, the first element is not satisfied.

No allegations in the Amended Complaint suggest that the Liquidators knew a particular plaintiff would be harmed in Minnesota.  The *Calder* effects test does not displace the requirement that Defendants purposefully "tether" the effect of their actions to the forum state itself, as opposed to people who just happen to live there.  *Pederson*

*v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020) (quoting *Walden*, 571 U.S. at 290) (noting that "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.") (cleaned up).  Aviva asserts that the Liquidators intentionally directed their actions at Minnesota by filing bankruptcy proceedings that disrupted the flow of litigation in this district.  (Aviva Opp. 12(b)(2) Mot. Dismiss, at 17.)  However, according to the Amended Complaint, the Liquidators were operating with limited resources and incomplete information.  The other defendants' "actions were taken in contemplation of Manley's bankruptcy case, to drain Manley of assets prior to the filing of the chapter 15 recognition petition, mislead Manley's liquidators and the court, and make it more difficult for creditors to trace or seize Manley's assets."  (Am. Compl. at ¶ 879.)  Considering all the allegations in the Amended Complaint as true, that claim undercuts Aviva's argument that the Liquidators initiated the bankruptcy proceedings to harm Plaintiffs in Minnesota. [15]

Accordingly, this Court finds that the *Calder* effects test is not satisfied.  Given Aviva's

---

[15] Additionally, this is not the first time Aviva has claimed the Liquidators acted in bad faith in U.S. Courts.  In 2020, the U.S. Bankruptcy Court, District of New Jersey held that the Liquidators had not acted in bad faith.  *In re Manley Toys Ltd.*, No. 16-cv-15374, 2020 WL 1580244, at *15 (Bankr. D.N.J. Mar. 31, 2020).  The Bankruptcy Court found that the Liquidators were unable to pursue claims against the defendants in this case to do lack of funding which is a justified reason.  *Id*. at *8.  The fact that Toy Quest funded the Liquidators was not an indication of bad faith because that was "typical in British Commonwealth countries" and Aviva never offered to fund the Liquidators themselves.  *Id.*  Further Aviva points to the presence of Manley associates on the committee of inspectors overlooking the Liquidators, but Aviva was offered a position on the committee and refused it and has not since attempted to join it.  *Id*. at 9.

failure to assert a prima facie basis for jurisdiction, the Court will dismiss the Liquidators

from the action.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Defendants' Motions to Dismiss [Docket Nos. 342, 343, 350, 356, 361, and

    371] are **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  Defendant's Motions to Dismiss are **DENIED IN PART** as to

        i.  Aviva's Fraudulent Transfer Claims Against Chan Ming Yiu,

            also known as Samson Chan, Liu Yi Man, also known as Lisa

            Liu, Brian Dubinsky, Chan Siu Lun, also known as Alan Chan,

            Toy Quest Ltd., Banzai International, Park Lane Solutions,

            Manley, and Dollar Empire; and

        ii. Aviva's Alter Ego Claims asserting that Aquawood, Toy Quest

            Ltd., Banzai International, Park Lane Solutions, Manley, MTD,

            Toy Network, LLC, and MGS International, LLC are alter egos

            of Chan Ming Yiu, also known as Samson Chan, Liu Yi Man,

            also known as Lisa Liu, Brian Dubinsky, and Chan Siu Lun, also

            known as Alan Chan;

    b.  Defendant's Motions to Dismiss are **GRANTED IN PART** as to

        i.  Aviva's Fraudulent Transfer Claims against Aquawood,

            Wellmax, MTD, Toy Network, LLC, and MGS International,

LLC, Richard Toth, Peter Magalhaes, Michael Wu, Robert Lees and Mat Ng;

  ii.   Aviva's Aiding and Abetting Fraudulent Transfer Claims;

  iii.  Aviva's Alter Ego Claims alleging Manley is an alter ego of Aquawood, Toy Quest Ltd., Banzai International, Park Lane Solutions, Manley, MTD, Toy Network, LLC, and MGS International, LLC, and;

  iv.   Aviva's Alter Ego Claims alleging Aquawood, Toy Quest Ltd., Banzai International, Park Lane Solutions, Manley, MTD, Toy Network, LLC, and MGS International, LLC are alter egos of each other.

2. Aviva's Fraudulent Transfer claims against Aquawood, Wellmax, MTD, Toy Network, LLC, and MGS International, LLC, Richard Toth, Peter Magalhaes, Michael Wu, Robert Lees and Mat Ng are **DISMISSED WITHOUT PREJUDICE;**

3. Aviva's Alter Ego Claim alleging Manley is an alter ego of Aquawood, Toy Quest Ltd., Banzai International, Park Lane Solutions, Manley, MTD, Toy Network, LLC, and MGS International, LLC is **DISMISSED WITHOUT PREJUDICE;**

41

4.  Aviva's Alter Ego Claims alleging Manley is an alter ego of Aquawood, Toy Quest Ltd., Banzai International, Park Lane Solutions, Manley, MTD, Toy Network, LLC, and MGS International, LLC are **DISMISSED WITHOUT PREJUDICE;**

5.  Aviva's Aiding and Abetting Fraudulent Transactions Claims are **DISMISSED WITH PREJUDICE;**

6.  Aviva's claims against Robert Lees and Mat Ng are **DISMISSED WITH PREJUDICE.**

DATED:  March 31, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court

42