UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ASI, INC.,                                Civil No. 19-763 (JRT/DTS)

             Plaintiff,

v.                               **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**

AQUAWOOD, LLC, *et al.*,

             Defendants.

---

Keith M. Sorge, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, PA**, 81 South Ninth Street, Suite 500, Minneapolis, MN 55402; Shelli L. Calland, Stephen A. Weisbrod, and Tamra Ferguson, I, **WEISBROD MATTEIS & COPLEY PLLC**, 1200 New Hampshire Avenue North West, Suite 600, Washington, DC 20036, for plaintiff;

Matthew D. Callanan, Brad R. Pollock, and Michael Reck, **BELIN MCCORMICK, PC**, 666 Walnut Street, Suite 2000, Des Moines, IA 50309, for defendants Aquawood, Dollar Empire LLC, Brian Dubinsky, and Peter Magalhaes, Wellmax Trading Ltd., and Michael Wu;

Brandon Underwood, Elizabeth N. Thomson, Devan Rittler-Patton, **FREDRIKSON AND BYRON**, 111 East Grand Avenue, Suite 301, Des Moines, IA 50309; Joseph H. Lubben, for defendants Banzai International Ltd, Park Lane Solutions Ltd., Toy Quest Ltd., Chan Ming Yiu, Liu Yi Man, and Chan Siu Lun;

David W. Asp, Kate M. Baxter-Kauf, and Robert David Hahn, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for defendants MGS International, LLC and Richard Toth.

ASI, Inc. ("ASI"), formally known as Aviva Sports, Inc., previously won a judgment in an action against Manley Toys, Ltd.  ASI brought this action alleging that several Defendants, working as a RICO enterprise, engaged in a series of fraudulent transfers in order to evade paying the judgment Manley owed to Aviva Sports.  Defendants move to dismiss this action because Aviva Sports allegedly sold the rights to any judgment from the Manley litigation when it sold most of its assets to Revel Match LLC.  But the same agreement under which Aviva Sports sold most of its assets to Revel Match excluded any claims against Manley in the *Fingerhut* litigation.  Therefore, because the Court finds that ASI owns the judgment at issue, ASI has plausibly alleged injury and has standing to bring its claims.  The Court will deny the Motion to Dismiss.

## BACKGROUND

### I. FACTUAL BACKGROUND

The Court has previously detailed the facts in this case and will only provide a brief summary of the relevant facts for the present motion.  *See ASI, Inc. v. Aquawood, LLC*, No. 19-763, 2022 WL 980398, at *1–4 (D. Minn. Mar. 31, 2022).  Defendants are an allegedly interconnected group of individuals and corporations primarily based in Hong Kong and led by three individuals—Chan Ming Yiu (also known as Samson Chan), Liu Yi Man (also known as Lisa Liu), and Brian Dubinsky—that sell toys and electronics in the United States.  (*See generally* Compl., Mar. 19, 2019, Docket No. 1.)  ASI alleges that Defendants use the

corporations interchangeably and shift resources among them to obfuscate legal proceedings. (Compl. ¶¶ 1, 3–10.)

On August 21, 2013, Aviva Sports won a judgment of $8,588,931.59 against Manley Toys, Ltd. ("Manley") in an action in the United States District Court for the District of Minnesota in *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc. et al.* ("*Fingerhut*"). (No. 09-1091, J., Aug. 21, 2013, Docket No. 827.) Though the *Fingerhut* litigation was initially based on both patent infringement and false advertising claims, Aviva Sports abandoned the patent infringement claim and solely pursued the false advertisement claim. (*See* No. 09-1091, Order, Feb. 27, 2013, Docket No. 785.) The judgment in favor of Aviva Sports was ultimately based on a false advertisement claim under the Lanham Act. (*See* No. 09-1091, J.)

### A.      Sale of Aviva Sports

Aviva Sports, which was wholly owned by ShoreMaster, Inc., sold most of its assets to Revel Match LLC in 2012. (Decl. Brandon Underwood ("Underwood Decl.") ¶ 5, Oct. 6, 2022, Docket No. 634.) The sale involved a series of agreements. (*See* Underwood Decl., Ex. B ("Closing Docs."), at 2, Oct. 6, 2022, Docket No. 635-1 (index of the closing documents).) The central agreement was the Asset Purchase Agreement ("APA"). (*See id.* at 4.) The other components of the transaction were a Bill of Sale, an Agreement Not to Compete, a Side Agreement, the Consent to Continued Use of Name, and various patent assignments. (*Id.* at 2.)

Under the APA, Aviva Sports sold most of its assets to Revel Match, including "all claims" of Aviva Sports against third parties relating to several categories of assets. (*Id.* at 5.) The APA explicitly excluded certain assets from the sale. Schedule 1(n) of the APA specifically excluded:

> Patent No. 6,558,264 and all rights and claims associated therewith, including, without limitation, infringement claims. (*Id.* at 30.)

The APA was signed on January 6, 2012, by Aviva Sports as the seller, ShoreMaster as the Stockholder, and Revel Match as the purchaser, and was effective as of the closing date on January 16, 2022. (*Id.* at 4, 6.)

### B.   Consent To Continued Use of Name

The sale also included a Consent To Continued Use of Name ("the Consent"). (*Id.* at 46.) The purpose of the Consent was to permit Aviva Sports to continue to use the name "Aviva Sports" after the sale to Revel Match, in order to maintain and pursue its claims against Defendants in the Fingerhut/Manley litigation. (*Id.*) The Consent states:

> for the avoidance of doubt, Seller and Purchaser hereby agree that the Manley Litigation and all claims and causes of action of Seller asserted therein are Excluded Assets (as defined in the APA).

(*Id.*) The Consent was dated January 16, 2022, and explicitly went into effect on the Closing as defined by the APA. Only Aviva Sports and Revel Match signed this particular agreement. *Id.*

## II. PROCEDURAL BACKGROUND

ASI attempted to collect the *Fingerhut* judgment against Manley from the Defendants but was unsuccessful. Accordingly, Plaintiff commenced this action on March 19, 2019, raising claims of fraud, abuse of process, civil conspiracy, and civil RICO violations. (*See generally* Compl.)

Defendants now move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) arguing that ASI does not actually own the judgment obtained in the Fingerhut/Manley litigation. (Mot. Dismiss, Oct. 6, 2022, Docket No. 630.) Defendants argue that Aviva Sports sold its rights to the Fingerhut judgment, so ASI has no ability to collect it. (Mem. Supp. Mot. Dismiss at 1–2, Oct. 6, 2022, Docket No. 632.) Accordingly, Defendants argue that ASI has not suffered an injury and therefore lacks standing to bring its claims. (*Id.*)

### DISCUSSION

## I. STANDARD OF REVIEW

A challenge to a party's standing is a challenge to the court's subject matter jurisdiction. *See Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019). In deciding a motion under Rule 12(b)(1), the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be

true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In other words, in a facial challenge, the court "determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint . . . and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2003) (citations omitted).  In a factual attack, the court "inquires into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), *overruled in part on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), and is free to consider "matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6.  The nonmoving party in a factual challenge "does not have the benefit of 12(b)(6) safeguards."  *Id.*  The party invoking federal jurisdiction bears the burden to prove jurisdictional facts by a preponderance of the evidence.  *Moss. v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018).

II. **ANALYSIS**

This motion presents a factual attack to subject matter jurisdiction.  Defendants argue that by the plain terms of the APA, Aviva Sports sold the rights to the *Fingerhut* litigation because it only excluded claims related to Patent No. 6,558,264 (the "264 Patent").  Defendants argue that because the Fingerhut judgment is based on a false advertisement claim, and not patent infringement, ASI has no rights to the judgment.  ASI

argues that the Consent makes clear that all claims from the Fingerhut/Manley litigation were excluded from the sale.

Under Minnesota law, "'instruments executed at the same time, for the same purpose, and in the course of the same transaction are, in the eyes of the law, one instrument and will be read and construed together unless the parties stipulate otherwise.'" *Gaia Leasing LLC v. Wendelta, Inc.*, No. 09-1067, 2010 WL 5421324, at *3 (D. Minn. Dec. 23, 2010) (quoting *Marso v. Mankato Clinic, Ltd.*, 153 N.W.2d 281, 288–89 (Minn. 1967). Whether "separate documents executed simultaneously should be treated as a single contract is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances." *Farrell v. Johnson*, 442 N.W.2d 805, 807 (Minn. Ct. App. 1989); see also Restatement (First) of Contracts § 235(c) (1932) ("[A]ll writings forming part of the same transaction are interpreted together."). Therefore, the Court must determine whether the APA and the Consent are part of the same transaction and must be read together.

*Farrell v. Johnson* is instructive. In that case, the court treated as one contract a sales agreement and the closing agreement related to the purchase of a ski resort because they were "made on the same day and obviously have overlapping significance," and the closing agreement specifically and expressly referred to the sales agreement. *Farrell* N.W.2d at 806–07. The transaction in this case is similar: the APA expressly states that it is to be executed on the closing date and the Consent was executed on the same closing

date.  Additionally, the Consent referred to and relied on terms defined in the APA, and explicitly mentions the relevant parties' intent to exclude the *Fingerhut* litigation claims from the APA.  Finally, the relevant agreements are bundled together with a cover titled: "Closing Documents Sale of Aviva Sports, Inc. Assets to Revel Match, LLC."  (Closing Docs. at 1–2.)  The Court finds these as persuasive evidence that the parties intended the multiple agreements to constitute one transaction.

Defendants respond that in Minnesota an agreement executed by different parties cannot constitute a single contract.  *Fraser v. Fraser*, 702 N.W.2d 283, 291 (Minn. Ct. App. 2005).  Consequently, Defendants argue that the Consent could not clarify or alter the APA because the Consent was only signed by Aviva Sports and Revel Match, while Aviva Sports, Revel Match, and ShoreMaster signed the APA.

Defendants extract too broad of a principal from *Fraser v. Fraser*.  In *Fraser*, a couple entered into **two separate agreements**, signed on the same date during the closing for a real estate transaction.  *Id.*  *Under* one agreement, the seller agreed to transfer title to a house to a married couple.  *Id.* at 286.  Under the second, the couple agreed transfer the title to the husband's father for cash needed to purchase the house from the initial seller.  *Id.*  The key issue in *Fraser* was whether the transfer of the title to the father created an equitable mortgage or whether the two agreements together constituted one transaction and created a contract for deed.  *Id.* at 288.  But the *Fraser* court refused to read the two agreements as one transaction because the parties were

not the same **and** because they did not involve the same subject. *Id.* at 291. This was not one transaction from the seller to the father, but instead two separate transactions, in which the title changed hands multiple times.

Here, not only were the APA and the Consent part of the same transaction—the sale of all of Aviva Sport's assets to Revel Match—but arguably it was signed by the same relevant parties. The only party that did not sign the Consent was ShoreMaster. But as the stockholder of Aviva Sports, ShoreMaster was not the seller, and the Consent did not alter or involve any of ShoreMaster's rights or assets. *Fraser* does not apply.

Therefore, the Court finds that all of the closing documents constituted one transaction and that the contract for sale of Aviva Sports to Revel Match explicitly excluded the Fingerhut/Manley litigation and the entire judgment that ASI now seeks to recover. The Court concludes that ASI has plausibly alleged injury and has standing to sue. Thus, the Court will deny the Motion to Dismiss.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss [Docket No. 630] is **DENIED.**

DATED: June 27, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge